Jack Z. ANDERSON and Teresa
A. Anderson, Appellants,

v.

TECO PIPELINE COMPANY, Appellee.

No. 04–97–00856–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 30, 1998.

Rehearing Overruled Jan. 22, 1999.

Dan Dennis Hartnett, San Antonio, for Appellant.

Thomas E. Sheffield, Charles B. McFarland, Elizabeth L. Dodge, Vinson & Elkins, L.L.P., Houston, for Appellee.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, KAREN ANGELINI, Justice.

TOM RICKHOFF, Justice.

In this eminent domain proceeding, the trial court granted Teco Pipeline Company an easement for a natural gas pipeline across the property of Jack Z. Anderson and Teresa A. Anderson and awarded the Andersons $13,980 for the taking. The Andersons appeal, arguing that the trial court erred by: 1) rendering an amended judgment during the period of its plenary power; 2) determining that Teco has the power of eminent domain; and 3) concluding that the pipeline is necessary for a public purpose. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Teco desired to build a natural gas pipeline between New Braunfels and Dewville. The pipeline would connect the Valero–Teco and Mid–Texas Pipelines, so that gas could be transported to Katy from West Texas and New Mexico fields. Teco negotiated with the Andersons to purchase an easement across their land in Guadalupe County to complete the pipeline. When the parties failed to reach an agreement, Teco filed a statement and petition in condemnation. The trial court appointed special commissioners, who conducted a hearing and granted the Andersons a monetary award for the taking.

The Andersons filed objections to the award, as well as a plea to the jurisdiction. In their plea to the jurisdiction, the Andersons argued that Teco does not have the power of eminent domain and that the pipeline would not serve a public purpose. The trial court overruled the plea to the jurisdiction, and the case proceeded to trial before a jury to determine whether Teco trespassed on the Andersons' property and the amount the Andersons should be compensated for the taking. The jury awarded the Andersons $12,180 as compensation for the taking and $1,800 as compensation for Teco's trespassing on their property.

On May 16, 1997, the trial court signed a document labeled "Final Judgment," which awards the Andersons $13,980 in accordance with the jury's verdict. Although this judg-

ment recites that Teco has the power of eminent domain, it does not expressly state that Teco has been granted an easement across the Andersons' property. On June 9, 1997, the Andersons filed a timely motion for new trial, and on July 18, 1997, Teco filed a motion to modify the judgment to provide for the transfer of the easement from the Andersons to Teco. On August 4, 1997, the trial court signed a document labeled "Amended Final Judgment," which expressly grants Teco the requested easement.

### THE OPERATIVE JUDGMENT

The Andersons argue that the May 16 judgment is the operative judgment, and the August 4 judgment is a nullity.

### 1. One–Judgment Rule

■ There can be only one final judgment in a cause. *See* TEX.R. CIV. P. 301. The entry of a second judgment in the same case does not automatically vacate the first judgment, and if there is nothing in the record to show that the trial court intended to replace the first judgment with the second judgment, the second judgment is a nullity. *See Mullins v. Thomas,* 136 Tex. 215, 150 S.W.2d 83, 84 (1941). The second judgment need not expressly state that the first judgment is vacated, although that is the preferable procedure. *See City of West Lake Hills v. State,* 466 S.W.2d 722, 726 (Tex.1971). Applying these principles here, the August 4 judgment, entitled "Amended Final Judgment," implicitly vacates the May 16 judgment, which was entitled "Final Judgment." *See id.* at 727 (second judgment entitled "corrected final judgment" replaced first judgment entitled "judgment"); *B & M Mach. Co. v. Avionic Enters., Inc.,* 566 S.W.2d 901, 902 (Tex.1978) (second judgment entitled "amended judgment" effectively vacated first judgment entitled "final judgment").

### 2. Trial Court Plenary Power

■ The Andersons nevertheless argue that the August 4 judgment is a nullity be-

cause it completely reverses the May 16 judgment, because Teco's motion to modify was a thinly disguised motion for judgment notwithstanding the verdict, and because the trial court did not sign an order granting the motion to modify. None of these considerations is relevant to determining whether the trial court had jurisdiction to render the August 4 judgment. That determination is governed by Rule 329b(e) of the Texas Rules of Civil Procedure, which provides:

> If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

TEX.R. CIV. P. 329b(e).

Because the trial court did not sign an order overruling the Andersons' timely motion for new trial, the motion was deemed overruled seventy-five days after the May 16 judgment was signed, *i.e.,* on July 30, 1997. *See* TEX.R. CIV. P. 329b(c). Pursuant to Rule 329b(e), the court's plenary power did not expire until thirty days after the motion for new trial was overruled by operation of law, *i.e.,* on August 29, 1997. During the period of its plenary power, the trial court had jurisdiction to alter its judgment in virtually any respect. *See Atascosa County Appraisal Dist. v. Tymrak,* 815 S.W.2d 364 (Tex. App.—San Antonio 1991), *aff'd,* 858 S.W.2d 335 (1993); *Garza v. Serrato,* 671 S.W.2d 713, 714 (Tex.App.—San Antonio 1984, no writ). Therefore, the August 4 judgment, signed within the period of the trial court's plenary power, is not a nullity.[1]

### 3. Void Judgment

■ The Andersons also argue that if the August 4 judgment is the operative judgment it is void because it grants relief not request-

---

1. The Andersons assert that because the May 16 judgment does not expressly grant Teco an easement, it implicitly denies Teco's right to condemn their property. Accordingly, they argue that they are entitled to a writ of possession, damages, and attorney fees. Because we have concluded that the August 4 judgment is the operative judgment, we find it unnecessary to address these arguments.

ed in the pleadings, contains hearsay, and grants perpetual relief to Teco. Because these arguments do not relate to the trial court's jurisdiction, they do not provide a basis for declaring the judgment void. *See Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990). We will therefore address these arguments only to determine whether they demonstrate reversible error.

■ The judgment provides that Teco "has the right to construct, maintain, and operate a 30–inch pipeline for the transportation of natural gas." The Andersons assert that this relief was not requested in Teco's petition. The petition states that Teco intends to "construct, maintain and operate a 30–inch pipeline designed to transport natural gas," that it needs an easement across the Andersons' property to complete the project, and that it seeks "the right to maintain, inspect, operate, protect, repair, replace, relocate, substitute and remove one pipeline. . . ." The petition requests the court to enter judgment vesting Teco with the foregoing property rights. These portions of the petition clearly support the complained-of language in the judgment.

■ The judgment also provides that all monies on deposit in the court's registry shall be returned to Teco. The Andersons assert that this relief was not requested in Teco's petition. Teco responds that although its petition did not specifically request this relief, the relief is encompassed by its request for any relief to which it might be entitled. We agree with Teco. After special commissioners have made an award, the condemnor may take possession of the disputed property pending further litigation if it deposits the amount of the award into the court's registry. *See* TEX. PROP.CODE ANN. § 21.021(a) (1984). But the judgment need not be paid out of the money in the court's registry. *See City of*

Houston v. Wolfe, 712 S.W.2d 228, 230 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd). Accordingly, the money deposited in the court's registry should be returned to Teco when it pays the $13,980 judgment amount to the Andersons.[2] The trial court did not err by granting Teco this relief. *See Groschke v. Gabriel,* 824 S.W.2d 607, 615 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (prayer for general relief allows trial court to order results that comport with the issues it has decided).

■ The Andersons next argue that the August 4 judgment contains hearsay because it incorporates Teco's petition. The judgment grants Teco and the Andersons "all other rights described in [Teco's] First Amended Statement and Petition for Condemnation . . . attached as Exhibit 'A' which is incorporated herein for all purposes." The petition includes a legal description of the easement. It is apparent from reviewing the trial proceedings that the parties and the trial court understood that once Teco established its right to condemn the Andersons' property, Teco would be granted the easement described in its petition.[3] The May 16 judgment, however, neglected to provide expressly for the easement, and the August 4 judgment was meant to correct this omission. The Andersons are attempting to benefit from this mistake by suggesting that Teco unfairly procured the August 4 judgment granting the easement without proving the description of the easement. The trial court committed no reversible error in this regard. An exhibit was admitted at trial containing the same description of the easement as is contained in Teco's petition, and the Andersons do not assert that the petition's description of the easement is erroneous.[4]

■ Finally, the portion of the petition that states the names and addresses of the

2. There is nothing in the record to indicate, nor do the parties assert, that the Andersons have accepted payment from Teco or that Teco has withdrawn the money deposited in the court's registry pending appeal.

3. For example, the jury charge, to which the Andersons did not object, informed the jury that Teco requires a fifty-foot-wide easement around the pipeline and asked the jury to determine the

difference in value of the Andersons' property before Teco's "taking of an easement" and the value after the taking. Additionally, an exhibit was admitted, without objection, containing the same legal description of the easement as is contained in Teco's petition.

4. The pipeline had already been constructed before trial.

defendants also states, "Teco reserves the right to add the name or names of any additional parties who may subsequently appear to possess an interest in the Property." The Andersons argue that because the judgment incorporated the petition by reference, this language grants perpetual relief to Teco. While we note that this provision is obviously out of place in a judgment, we do not construe it as granting perpetual relief. As Teco concedes, once the judgment was rendered, any right it had to add new parties to the lawsuit expired.

### THE POWER OF EMINENT DOMAIN

The Andersons next assert that Teco does not have the power of eminent domain.

 The power of eminent domain must be conferred by the legislature, either expressly or by necessary implication, and will not be gathered from doubtful inferences. *See Coastal States Gas Producing Co. v. Pate,* 158 Tex. 171, 309 S.W.2d 828, 831 (Tex.1958). Statutes granting the power of eminent domain are strictly construed in favor of the landowner and against the condemnor. *See id.*

 Teco claims that it has the power of eminent domain by virtue of articles 1435 and 1436 of the Texas Revised Civil Statutes. Article 1435 provided:

*Gas,* electric current and power *corporations shall have power to* generate, make and manufacture, *transport* and sell gas, electric current and power to individuals, the public and municipalities for light, heat, power and other purposes, and to make reasonable charges therefor; ... *to own, hold and use such lands, right of way, easements, franchises, buildings and structures as may be necessary for the purpose of such corporation.*

Act of June 19, 1987, 70th Leg., R.S., ch. 1079, § 1, 1987 Tex. Gen. Laws 3684, 3684–85 (current version at TEX. UTIL.CODE ANN. §§ 181.007–008 (Vernon 1998) (effective September 1, 1997)) (emphasis added).

Article 1436 provided:

Such corporation shall have the right and power to enter upon, condemn and appropriate the lands, right-of-way, ease-ments and property of any person or corporation....

Act of May 26, 1967, 60th Leg., R.S., ch. 306, § 1, 1967 Tex. Gen. Laws 730, 730 (current version at TEX. UTIL.CODE ANN. § 181.004 (Vernon 1998) (effective September 1, 1997)).

It has been noted that while these statutes grant the power of eminent domain to gas corporations, they offer no definition of the term "gas corporations." *See Roadrunner Investments, Inc. v. Texas Utilities Fuel Co.,* 578 S.W.2d 151, 153 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.). Courts have therefore turned to article 6050 of the Texas Revised Civil Statutes to determine whether a corporation asserting the power of eminent domain under articles 1435 and 1436 actually has such power. *See, e.g., Loesch v. Oasis Pipe Line Co.,* 665 S.W.2d 595, 597–98 (Tex. App.—Austin 1984, writ ref'd n.r.e.). Article 6050 provided:

"[G]as utility" ... means a person owning, managing, operating, leasing or controlling within this State any pipe lines, plant, property, equipment, facility, franchise, license, or permit for either one or more of the following kinds of business:

. . . .

Owning or operating or managing a pipe line for the transportation or carriage of natural gas, whether for public hire or not, if any part of the right of way for said line has been acquired, or is hereafter acquired by the exercise of the right of eminent domain.

Act of June 15, 1993, 73rd Leg., R.S., ch. 660, § 14, 1993 Tex. Gen. Laws 2447, 2451 (current version at TEX. UTIL.CODE ANN. § 121.001(a)(2) (Vernon 1998) (effective September 1, 1997)).

Based on these three statutes, courts have determined that a corporation operating a gas pipeline has the power of eminent domain if it devotes its private property and resources to public service and allows itself to be publicly regulated. *See Loesch,* 665 S.W.2d at 597–98; *Roadrunner Investments,* 578 S.W.2d at 154; *see also Grimes v. Corpus Christi Transmission Co.,* 829 S.W.2d 335, 339 (Tex.App.—Corpus Christi 1992, writ denied).

Under this test, Teco has the power of eminent domain. The evidence establishes that Teco, and the previously existing portions of this pipeline, are regulated by the Railroad Commission. Teco's chief financial officer, Steven Cruse, testified that Teco is required to file an annual "Gas Utilities Gathering Report" with the Railroad Commission. The report itself reflects that it is required to be filed by a "gas utility" as that term is defined in article 6050. *See* 16 TEX. ADMIN. CODE §§ 7.1, 7.40 (West 1998). Cruse testified that the new 30-mile portion of the pipeline would be included in the next annual report. Cruse also stated that Teco is required to file quarterly tax reports with the Railroad Commission and that it is taxed as a gas utility. Moreover, by acquiring the easement over the Andersons' property, Teco has subjected itself to numerous regulatory burdens regarding such matters as the rates it may charge. *See Loesch,* 665 S.W.2d at 598 & n. 2. According to Cruse, the pipeline is open to anyone who would like to ship gas through it. At the time of the hearing on the plea to the jurisdiction, Teco had contracts with seven to ten producers to move gas through the line.

The Andersons suggest that articles 1435 and 1436 only grant the power of eminent domain to corporations that sell gas to end users or to other utilities. The statutory language does not include such a requirement and other courts have rejected this argument. *See Loesch,* 665 S.W.2d at 596–99 (pipeline company that did not own or sell the gas transported through its pipeline had the power of eminent domain under articles 1435, 1436, and 6050); *Roadrunner Investments,* 578 S.W.2d at 154 (company had the power of eminent domain under articles 1435, 1436, and 6050 even though it did not sell gas to the general public). Although we are required to construe the statutes strictly, "[s]trict construction is not ... the exact converse of liberal construction, for it does not require that the words of a statute be given the narrowest meaning of which they are susceptible." *Pate,* 309 S.W.2d at 831. We conclude that the trial court did not err in determining that Teco has the power of eminent domain.

PUBLIC PURPOSE

The Andersons argue that even if Teco generally has the power of eminent domain, it failed to satisfy its burden of proving that the easement across their property was necessary for a public purpose. They also argue that the trial court erred by deciding the issue of public purpose as a matter of law and by excluding evidence relevant to this issue.

The power of eminent domain can only be used to take property for a public purpose. *See* TEX. CONST. art. I, § 17; *Maher v. Lasater,* 163 Tex. 356, 354 S.W.2d 923, 924–25 (1962); *Saunders v. Titus County Fresh Water Supply Dist. No. 1,* 847 S.W.2d 424, 427 (Tex.App.—Texarkana 1993, no writ). The question of whether a given set of facts constitutes a public or private use is ordinarily one of law for the court to decide. *Tenngasco Gas Gathering Co. v. Fischer,* 653 S.W.2d 469, 474 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). We must give great weight to the legislature's declaration that a use is public and its delegation of the power of eminent domain when we review a complaint that a particular use does not serve a public purpose. *See Coastal Indus. Water Auth. v. Celanese Corp.,* 592 S.W.2d 597, 600 (Tex.1979); *Fischer,* 653 S.W.2d at 475. Moreover, if a statute delegating the power of eminent domain does not require proof of necessity, the condemnor need only show that its board of directors determined that the taking was necessary. *See Bevley v. Tenngasco Gas Gathering Co.,* 638 S.W.2d 118, 121 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). This determination is conclusive, absent fraud, bad faith, abuse of discretion, or arbitrary or capricious action. *See Coastal Indus. Water Auth.,* 592 S.W.2d at 600; *Anderson v. Clajon Gas Co.,* 677 S.W.2d 702, 704–05 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Bevley,* 638 S.W.2d at 121. Articles 1435 and 1436 do not require proof of necessity. *See Anderson,* 677 S.W.2d at 705; *Bevley,* 638 S.W.2d at 121. Therefore, once a company establishes that its right to condemn is derived from these articles and that its board of directors determined that the taking was necessary, a court should approve the taking unless the land-

owner demonstrates fraud, bad faith, abuse of discretion, or arbitrary and capricious action.[5] *See Anderson,* 677 S.W.2d at 705; *Loesch,* 665 S.W.2d at 599; *Bevley,* 638 S.W.2d at 121. When a fact issue exists regarding whether the company's decision was made in bad faith or was arbitrary, capricious, or fraudulent, that issue may be submitted to the jury for determination. *See Ludewig v. Houston Pipeline Co.,* 773 S.W.2d 610, 614 (Tex.App.—Corpus Christi 1989, writ denied); *Houston Lighting & Power Co. v. Klein Indep. Sch. Dist,* 739 S.W.2d 508, 520 (Tex.App.—Houston [14th Dist.] 1987, writ denied); *Fischer,* 653 S.W.2d at 474–75.

■■■ The Andersons argue that Teco failed to establish that the governing board made a determination of necessity. Although Teco produced both a unanimous consent of shareholders and a unanimous consent of directors stating that the pipeline is needed to serve a public purpose, the Andersons argue that these resolutions are insufficient because they do not include a finding that taking the Andersons' property in particular was necessary. The resolutions describe the pipeline's route as beginning near New Braunfels and proceeding in a south to southeasterly direction through Comal, Guadalupe, and Wilson Counties and into Gonzales County near the town of Dewville. This is sufficient; Teco was not required to produce a resolution finding that the Andersons' particular tract of land was necessary for the project. *See Houston Lighting & Power Co. v. Fisher,* 559 S.W.2d 682, 685–86 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.).

■■■ The Andersons also argue that the trial court erred in excluding testimony that would have established Teco's actions were arbitrary and capricious. The trial court excluded the testimony of Teco's president, its vice-president and chief engineer, and its chief financial officer. The Andersons' counsel made a bill of exceptions, describing what the witnesses' testimony would be. Counsel also made the witnesses' depositions and pre-

vious court testimony part of the bill of exceptions.

The evidence the Andersons sought to introduce was immaterial to the question of whether Teco acted arbitrarily and capriciously. The Andersons point out that Teco was under no contractual or regulatory authority to deliver gas when it authorized the construction of the pipeline. This is not evidence of arbitrary or capricious action. It is undisputed that the pipeline was needed because the only existing pipeline for transporting gas in this area had been chronically over capacity for years, preventing gas from getting to market. *See Anderson,* 677 S.W.2d at 705 (company did not act arbitrarily and capriciously although it did not have any gas under contract when right of way was acquired). The Andersons also note that no surveys were done prior to the board's resolution; the route was determined by the pre-existing pipelines. For economic reasons, Teco attempted to follow the straightest route possible between the two points. Again, this is not evidence of arbitrary or capricious action. *See Ludewig,* 773 S.W.2d at 614 ("Choosing the most economically feasible path for its pipeline is not evidence of arbitrary or capricious action."). Because the excluded testimony had no probative force on the issue of arbitrariness and capriciousness, it was not reversible error for the trial court to exclude the testimony. *See Texas Pipe Line Co. v. Hunt,* 222 S.W.2d 128, 134 (Tex.Civ.App.—Dallas 1949), *aff'd,* 149 Tex. 33, 228 S.W.2d 151 (Tex.1950).

### CONCLUSION

The judgment of August 4, 1997 is affirmed.

---

5. Proof that the board made a determination of necessity is also required for the trial court to have jurisdiction to grant a right of way to a

condemnor. *See Saunders,* 847 S.W.2d at 425–26; *Bevley,* 638 S.W.2d at 121.