

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

November 4, 2004

The Honorable Rodney Ellis
Chair, Committee on Government Organization
Texas State Senate
Post Office Box 12068
Austin, Texas 78711

Opinion No. GA-0268

Re: Whether municipal management districts have eminent domain powers (RQ-0228-GA)

Dear Senator Ellis:

You ask whether municipal management districts have eminent domain powers, and if so, the extent of those powers.[1] Although you specifically ask about "management districts" without limitation, we limit our response to municipal management districts created under chapters 375 and 376 of the Local Government Code because the type of district that prompts your question is a municipal management district. *See* Request Letter, *supra* note 1, at 1; *see also* TEX. LOC. GOV'T CODE ANN. chs. 375-76 (Vernon 1999 & Supp. 2004-05). We do not consider any other type of management district. *See, e.g.*, TEX. REV. CIV. STAT. ANN. art. 4477-7k, § 2.01 (Vernon Supp. 2004-05) (creating the Upper Sabine Valley Solid Waste Management District, a conservation and reclamation district).

## I.    Factual Background

Earlier this year, the Harris County Improvement District No. 3 (the "HCID3"), formerly known as the "Upper Kirby Management District,"[2] a municipal management district created under chapter 376, subchapter E threatened to condemn a building in Houston that the Girl Scouts of San Jacinto Council was attempting to acquire from the owner, AAA of Southern California.[3] *See* TEX. LOC. GOV'T CODE ANN. § 376.151(a) (Vernon Supp. 2004-05) (creating the HCID3). The HCID3 also wished to acquire the building. *See* March 9 Letter, *supra* note 3, at 1. At that time, the

---

[1]Letter from Honorable Rodney Ellis, Chair, Committee on Government Organization, Texas State Senate, to Honorable Greg Abbott, Texas Attorney General, at 1 (May 12, 2004) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See* Act of June 1, 2003, 78th Leg., R.S., ch. 766, § 8(a), 2003 Tex. Gen. Laws 2224, 2226.

[3]*See* Letter from Honorable Rodney Ellis, Chair, Committee on Government Organization, Texas State Senate, to Honorable Greg Abbott, Texas Attorney General, at 1 (Mar. 9, 2004) (on file with the Opinion Committee) [hereinafter March 9 Letter].

HCID3's power of eminent domain was questioned in a lawsuit. *See id.*[4] You inform us, however, that the HCID3 and the Girl Scouts of San Jacinto Council "reached an agreement . . . and ended all legal action." Request Letter, *supra* note 1, at 1.

Nevertheless, you ask us to "clarify the extent of the power of eminent domain for all management districts," not just the HCID3. *Id.* As you aver, "management districts have been formed around the state" under a variety of statutes. *Id.* Some of these statutes, you suggest, "have conflicting provisions regarding eminent domain." *Id.* You therefore ask us to resolve these perceived conflicts.

## II.    Chapters 375 and 376 of the Local Government Code

Chapter 375 of the Local Government Code provides generally for municipal management districts. *See* TEX. LOC. GOV'T CODE ANN. ch. 375 (Vernon 1999 & Supp. 2004-05). The Texas Commission on Environmental Quality[5] (the "TCEQ") may create a municipal management district (a "district") only:

> (1) in an area devoted primarily to commercial development and business activity inside the boundaries of a municipality with a population of at least 25,000; or

> (2) in an area devoted primarily to commercial development or business activity.

*Id.* § 375.021 (Vernon 1999). *But see id.* § 375.027 (limiting the creation of a district in a municipality with a population of more than 1.5 million). Once created by TCEQ order, the district is governed by a board of "at least nine but not more than 30 directors who serve staggered four-year terms." *Id.* § 375.061. The TCEQ order lists the initial board members, but the municipal governing body appoints succeeding board members. *See id.* § 375.064(a). A municipal management district has the general powers of a conservation and reclamation district subject to Water Code chapter 49. *See id.* § 375.091 ("General Powers"). The Water Code expressly gives eminent domain powers to conservation and reclamation districts that are subject to its provisions. *See* TEX. WATER CODE ANN. § 49.222(a) (Vernon 2000) (granting a conservation and reclamation district authority to condemn property "inside or outside the district boundaries . . . necessary for water, sanitary sewer, storm drainage, or flood drainage or control purposes for any other of its projects or purposes"). By

---

[4]*See also* Letter from Nancy S. Fuller, Chair, Opinion Committee, Texas Attorney General, to Honorable Rodney Ellis, Chair, Committee on Government Organization, Texas State Senate, at 1 (Apr. 21, 2004) (on file with the Opinion Committee) (stating the policy of this office "to refrain from issuing an attorney general opinion" on a matter that is "the subject of pending litigation").

[5]Chapter 375 expressly provides that the "Commission," which term is defined as the Texas Natural Resource Conservation Commission, *see* TEX. LOC. GOV'T CODE ANN. § 375.003(3) (Vernon 1999), has sole authority to create a district. *See id.* §§ 375.022-.041 (referring in numerous places to the "commission"). The Natural Resource Conservation Commission is now the Texas Commission on Environmental Quality. *See* http://www.tceq.state.tx.us/about/.

contrast, chapter 375 of the Local Government Code expressly withholds eminent domain powers from municipal management districts: "A district may not exercise the power of eminent domain." TEX. LOC. GOV'T CODE ANN. § 375.094 (Vernon 1999).

Chapter 376 provides for the creation of 17 specific municipal management districts. In the following list, the names of the districts from which eminent domain powers are expressly withheld are underlined:[6]

1. Houston Downtown Management District, *see id.* § 376.001(a);

2. Westchase Area Management District, *see id.* § 376.041(a);

3. Greater Greenspoint Management District, *see id.* § 376.081(a);

4. First Colony Management District, *see id.* § 376.111(a);

5. Harris County Improvement District No. 3, *see id.* § 376.151(a) (Vernon Supp. 2004-05);

6. Harris County Improvement District No. 2, *see id.* § 376.211(a) (Vernon 1999);

7. Greater East End Management District, *see id.* § 376.261(a) (Vernon Supp. 2004-05);

8. East Downtown Management District, *see id.* § 376.301(a);

9. Midtown Management District, *see id.* § 376.351(a);

10. Harris County Municipal Management District No. 1, *see id.* § 376.401(a);

11. Near Northwest Management District, *see id.* § 376.451(a);[7]

---

[6]With the exception of subchapter K, *as added by* Act of May 26, 2001, 77th Leg., R.S., ch. 1380, § 1, sec. 376.451, 2001 Tex. Gen. Laws 3542, 3542, creating the Port Bolivar Improvement District, chapter 376 has been repealed effective April 1, 2005. *See* Act of May 20, 2003, 78th Leg., R.S., ch. 1277, § 6(6)(B)-(I), 2003 Tex. Gen. Laws 4454, 4653-54. Effective April 1, 2005, these subchapters (again with the exception of the subchapter creating the Port Bolivar Improvement District) will be codified in the new Special District Local Laws Code. *See id.* § 1, 2003 Tex. Gen. Laws at 4489-4591; *id.* § 9, 2003 Tex. Gen. Laws at 4654 ("Effective Date"). Subchapter K, *as added by* Act of May 26, 2001, 77th Leg., R.S., ch. 1380, § 1, 2001 Tex. Gen. Laws 3542, 3542-48, expired on January 1, 2003, "unless before that date the district [was] confirmed at an election." Act of May 26, 2001, 77th Leg., R.S., ch. 1380, § 3, 2001 Tex. Gen. Laws 3542, 3548. We have found no information that such an election was ever conducted.

[7]*As adopted by* Act of May 15, 2001, 77th Leg., R.S., ch. 418, § 1, 2001 Tex. Gen. Laws 797, 798.

12.  Greater Northside Management District, *see id.* § 376.451(a);[8]

13.  Old Town Spring Improvement District, *see id.* § 376.451(a);[9]

14.  Harris County Improvement District No. 4, *see id.* § 376.451(a);[10]

15.  Frisco Square Management District, *see id.* § 376.451(a);[11]

16.  Aldine Community Improvement District, *see id.* § 376.451(a);[12] and

17.  Greater Southeast Management District, *see id.* § 376.451(a).[13]

*See id.* §§ 376.052(b), .222, .272, .312, .462,[14] .462,[15] .463,[16] .465,[17] .474[18] (Vernon 1999 & Supp. 2004-05) (stating, with respect to certain districts, that "[t]he district may not exercise the power of eminent domain").

## III.    Analysis and Conclusions

### A.    Questions 1 and 2

The legislature must confer the power of eminent domain "either expressly or by necessary implication." *Burch v. City of San Antonio*, 518 S.W.2d 540, 544 (Tex. 1975); *Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 564 (Tex. App.–San Antonio 1998, pet. denied).  Because

---

[8]*As adopted by* Act of May 23, 2001, 77th Leg., R.S., ch. 1356, § 1, 2001 Tex. Gen. Laws 3349, 3349.

[9]*As adopted by* Act of May 17, 2001, 77th Leg., R.S., ch. 1371, § 1, 2001 Tex. Gen. Laws 3460, 3460.

[10]*As adopted by* Act of May 23, 2001, 77th Leg., R.S., ch. 1376, § 1, 2001 Tex. Gen. Laws 3528, 3528.

[11]*As adopted by* Act of May 23, 2001, 77th Leg., R.S., ch. 1384, § 1, 2001 Tex. Gen. Laws 3557, 3557.

[12]*As adopted by* Act of May 17, 2001, 77th Leg., R.S., ch. 1433, § 1, 2001 Tex. Gen. Laws 5131, 5131.

[13]*As adopted by* Act of May 25, 2001, 77th Leg., R.S., ch. 1476, § 1, 2001 Tex. Gen. Laws 5245, 5246.

[14]*As adopted by* Act of May 23, 2001, 77th Leg., R.S., ch. 1356, § 1, 2001 Tex. Gen. Laws 3349, 3352.

[15]*As adopted by* Act of May 25, 2001, 77th Leg., R.S., ch. 1476, § 1, 2001 Tex. Gen. Laws 5245, 5250.

[16]*As adopted by* Act of May 15, 2001, 77th Leg., R.S., ch. 418, § 1, 2001 Tex. Gen. Laws 797, 798.

[17]*As adopted by* Act of May 17, 2001, 77th Leg., R.S., ch. 1371, § 1, 2001 Tex. Gen. Laws 3460, 3464.

[18]*As adopted by* Act of May 17, 2001, 77th Leg., R.S., ch. 1433, § 1, 2001 Tex. Gen. Laws 5131, 5136.

chapter 375 expressly withholds eminent domain authority from municipal management districts created under that chapter, such a municipal management district does not possess eminent domain powers. With respect to a particular district created under chapter 376, on the other hand, the special statute must be analyzed to determine whether the power of eminent domain is conferred expressly or by necessary implication.

With respect to the nine districts from which the power of eminent domain is expressly withheld, whose names are underlined in the list *supra*, we conclude, in answer to your first two questions, that the legislature did not intend to confer and indeed did not confer the power of eminent domain. Consequently, these districts have no power of eminent domain.

The enabling statutes of the remaining districts are silent on the issue of eminent domain. None of the districts are expressly authorized to exercise that power. Looking specifically at HCID3, the subject of your original question, as an example, section 376.160 of the Local Government Code provides it with the powers of certain other types of districts, including a municipal management district created under chapter 375:

> The district has:
>
> (1)  all powers necessary or required to accomplish the purposes for which the district was created;
>
> (2)  the rights, powers, privileges, authority, and functions of a district created under Chapter 375 ["Municipal Management Districts in General," discussed *supra* at pp. 2-3];
>
> (3)  the powers, duties, and contracting authority specified in Subchapters H and I, Chapter 49, Water Code;
>
> (4)  the powers given to a corporation under Section 4B, Development Corporation Act of 1979 . . . and the power to own, operate, acquire, construct, lease, improve, and maintain projects described by that section;
>
> (5)  the power of a housing finance corporation created under Chapter 394;
>
> (6)  the power to impose, assess, charge, or collect ad valorem taxes, assessments, impact fees, or other fees in accordance with Chapter 49, Water Code . . . ;
>
> (7)  the power to contract with the municipality or county for the provision on a fee basis of law enforcement and security services by the county or municipality; and

> (8) the power to contract with a private entity for the provision of supplemental security services.

TEX. LOC. GOV'T CODE ANN. § 376.160 (Vernon Supp. 2004-05) (footnote omitted).

Of the types of entities whose powers the HCID3 is given under section 376.160, two have certain express eminent domain powers. Section 49.222 of the Water Code, part of chapter 49, subchapter H and incorporated by section 376.160(3), provides a district or water supply corporation subject to the chapter with authority to acquire certain real property by condemnation, or eminent domain. *See* TEX. WATER CODE ANN. § 49.222(a) (Vernon 2000). A corporation created under section 4B of the Development Corporation Act of 1979, whose powers are among those of the HCID3 by virtue of section 376.160(4), has the power to condemn real property but only if the eligible city's governing body approves the action. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(j) (Vernon Supp. 2004-05). Because section 376.160(3) of the Local Government Code provides the HCID3 with powers given a water district or water supply corporation under chapter 49, subchapter H of the Water Code, and the powers given a corporation under section 4B of the Development Corporation Act of 1979, arguably the HCID3 has the power of eminent domain. On the other hand, chapter 375 of the Local Government Code, which applies to the HCID3 through section 376.160(2) and which applies generally to management districts like the HCID3, expressly forbids a management district to exercise the power of eminent domain. *See* TEX. LOC. GOV'T CODE ANN. § 375.094 (Vernon 1999). Moreover, if the HCID3's powers included that of eminent domain, we would have to determine whether the district may exercise that power without the approval of another governmental body, as section 49.222 of the Water Code would allow, or only with the approval of some governmental body, as section 4B of the Development Corporation Act of 1979 would require.

Given the contradictory nature of the HCID3's powers, we cannot say that its enabling statute, chapter 376, subchapter E, implicitly confers the power of eminent domain. In particular here, given the fact that the eminent domain powers of two of the entities whose powers are incorporated into the HCID3's powers conflict, the legislature's intent is unclear. We consequently conclude that the HCID3 does not have the power of eminent domain.

We have not considered whether the remaining seven management districts have the power of eminent domain, notwithstanding their lack of express eminent domain power. The enabling statute for each district must be analyzed as we have done here for the HCID3, with possible consideration of the statute's legislative history, to determine whether the particular district has eminent domain power.

**B.     Question 3**

You finally ask whether a municipal management district that has the power of eminent domain—assuming there are any—may use its power to "interfere with a transaction between two interested parties solely because the [d]istrict desires to acquire the property for its own use." Request Letter, *supra* note 1, at 1. A governmental body in Texas may exercise the power of eminent domain for a public purpose only. *See* TEX. CONST. art. I, § 17; *Maher v. Lasater*, 354

S.W.2d 923, 924 (Tex. 1962). A governmental body exceeds its eminent domain powers "when and only when" it condemns property "for a use unconnected with its legitimate purposes." *Atwood v. Willacy County Navigation Dist.*, 271 S.W.2d 137, 141 (Tex. Civ. App.–San Antonio 1954, writ ref'd n.r.e.); *accord* Tex. Att'y Gen. Op. No. JC-0179 (2000) at 5. Thus, a district with the power of eminent domain may use the power to acquire property for a use consistent with the district's legitimate purposes even if exercise of the eminent domain power may interfere with a transaction between private parties. Whether property is being condemned, in any particular circumstance, for a legitimate purpose of a condemning municipal management district is a question of fact that cannot be resolved in the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0156 (2004) at 10 (stating that fact questions cannot be answered in the opinion process).

## S U M M A R Y

A municipal management district created under chapter 375 of the Local Government Code has no power of eminent domain. A municipal management district created under chapter 376 has eminent domain power only if the power is conferred expressly or implicitly. Those districts whose enabling statutes expressly withhold eminent domain power do not have such power. The Harris County Improvement District No. 3 does not have eminent domain power. The enabling statute of any other municipal management district must be analyzed to consider whether the statute confers expressly or implicitly the power of eminent domain. A municipal management district with the power of eminent domain may use the power to acquire property for a use consistent with the district's legitimate purposes even if exercise of the eminent domain power may interfere with a transaction between private parties. Whether property is being condemned, in any particular circumstance, for a legitimate purpose of the condemning municipal management district is a question of fact.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee