

# IN THE
## TENTH COURT OF APPEALS

No. 10-10-00428-CV

**CHRISTOPHER LEE WARREN,**

                                                    **Appellant**

 **v.**

**MEAGAN DEANNE EARLEY,**

                                                    **Appellee**

**From the 13th District Court**
**Navarro County, Texas**
**Trial Court No. 10-19597-CV**

## MEMORANDUM OPINION

Appellant, Christopher Lee Warren, challenges a protective order entered in favor of appellee, Meagan Deanne Earley. By three issues, Warren contends that: (1) the trial court abused its discretion in entering the protective order because there is insufficient evidence to demonstrate that family violence has occurred or will occur in the future; and (2) the trial court erred in signing an amended protective order without providing notice to Warren or conducting a hearing. We affirm.

## I. BACKGROUND

Earley and Warren dated and lived together for approximately eight years. Earley alleged that, after they had broken up, Warren stalked her and made various threats. As a result, Earley filed an application for a protective order. On October 14, 2010, the trial court granted Earley a temporary ex parte protective order and set the matter for a hearing on October 28, 2010. At the October 28, 2010 hearing, Earley testified about various instances of violence and criminal behavior allegedly engaged in by Warren. At the conclusion of the hearing, the trial court granted Earley a one-year protective order. In his original order, the trial judge failed to check off any of the boxes corresponding to requirements that Warren was to obey while the protective order was in effect. Realizing this oversight a couple of weeks later, the trial judge, without another hearing, signed an amended protective order which checked off the appropriate boxes and included his initials. As a result, Warren is prohibited from communicating with, threatening, or harming Earley. In addition, Warren was ordered to stay more than 200 yards away from Earley and her residence and to not stalk her.

Warren subsequently filed a notice of appeal, a request for findings of fact and conclusions of law, and a motion nunc pro tunc to correct the amended protective order. The trial court entered the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Meagan Deanne Earley (hereinafter "Earley") and Christopher Lee Warren (hereinafter "Warren") were involved in a romantic relationship for eight years.

2. Earley and Warren lived together during the relationship.

3. During the relationship, Warren assaulted Earley by shoving her into a windowsill causing bodily injury.

4. During the relationship, Warren assaulted Earley by shoving her into a wall causing bodily injury.

5. Earley and Warren continued living together after the incidents of violence.

6. Earley continued using Warren's finances after the incidents of violence and even after the parties separated.

7. Warren appears at locations where Earley frequents and then follows her home.

8. Warren committed criminal mischief to the tires of Earley's vehicle by cutting them.

9. Warren committed burglary at Earley's residence by entering Earley's residence without her consent and taking mail.

10. Earley is fearful of future violence by Warren.

<u>CONCLUSIONS OF LAW</u>

1. Earley and Warren were members of a household.

2. Warren committed family violence against Earley.

3. Warren is likely to commit family violence in the future against Earley.

4. The Court's protective order should remain in effect for one year.

And pursuant to Warren's motion for nunc pro tunc, the trial judge signed a third protective order, only changing the amended protective order to reflect that the parties had not agreed to the terms of the protective order.

## II. Sufficiency of the Evidence Supporting the Protective Order

In his first two issues, Warren argues that the evidence is legally and factually insufficient to support the trial court's findings that he committed family violence and that family violence would occur again in the future.

### A. Standard of Review[1]

A trial court's findings of fact in a bench trial "have the same force and dignity as the jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Further, "[w]hen the trial court acts as a fact[-]finder, its findings are reviewed under legal and factual sufficiency standards." *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000).

In reviewing for legal sufficiency of the evidence, we consider the evidence in the light most favorable to the trial court's finding. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). The test for legal sufficiency "must always be whether the evidence at trial would enable [a] reasonable and fair-minded [fact-finder] to reach the [conclusion] under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* The fact-finder is the sole judge

---

[1] We note that there is some disagreement among the intermediate appellate courts as to the proper standard of review to be applied in appeals from protective orders. At least one court has held that because a protective order provides relief similar to that provided by an injunction, the proper standard of review is abuse of discretion. *See In re Epperson*, 213 S.W.3d 541, 542-43 (Tex. App.—Texarkana 2007, no pet.). However, other courts, including this one, have applied legal and factual sufficiency standards of review to appeals from protective orders. *See Clements v. Haskovec*, 251 S.W.3d 79, 84 (Tex. App.—Corpus Christi 2008, no pet.); *In re T.L.S.*, 170 S.W.3d 164, 166 (Tex. App.—Waco 2005, no pet.) ("We apply the usual no-evidence and factual insufficiency standards of review in an appeal from a protective order."), *overruled on other grounds by In re J.D.*, 304 S.W.3d 522 (Tex. App.—Waco 2009, no pet.); *Vongontard v. Tippit*, 137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Pena v. Garza*, 61 S.W.3d 529, 532 (Tex. App.—San Antonio 2001, no pet.).

of the credibility of the witnesses and the weight to be assigned to their testimony. *Id.* at 819.

We review the trial court's conclusions of law de novo. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Conclusions of law are upheld if the judgment can be sustained on any legal theory the evidence supports. *See Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.—Austin 1999, pet. denied); *see also Fulgham v. Fischer*, No. 05-10-00097-CV, 2011 Tex. App. LEXIS 5865, at *6 (Tex. App.—Dallas July 29, 2011, no pet. h.). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ); *see also Fulgham*, 2011 Tex. App. LEXIS 5865, at *6. Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Westech Eng'g, Inc.*, 835 S.W.2d at 196.

In a factual sufficiency review, we must consider and weigh all of the evidence in a neutral light. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The evidence is factually insufficient only if we conclude "that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some evidence of probative force in support of the verdict." *Id.* Fact findings are not conclusive when, as in this case, a complete reporter's record appears in the record if the contrary is established as a matter of law or if there is no evidence to support the finding. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

## B. Applicable Law

The trial court shall render a protective order if, after a hearing, it finds that family violence has occurred and is likely to occur in the future. TEX. FAM. CODE ANN. §§ 81.001, 85.001 (West 2008). Family violence includes:

> an act by a member of a family or household[2] against another member of the family or household . . . that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

*Id.* § 71.004(1) (West 2008). Our focus, therefore, is on the evidence regarding any act by Warren that was a threat reasonably placing Earley "in fear of imminent physical harm, bodily injury, assault" and the likelihood that such threats, if made, would reoccur in the future. *See id.* §§ 81.001, 85.001.

## C. Discussion

Here, Earley and Warren dated and lived together for approximately eight years, but have now broken up. Earley testified that, about a year before the hearing on her protective order request, Warren shoved her against a windowsill that resulted in a scar on her leg. Earley recalled that, on another occasion, she jammed her finger when Warren shoved her against a wall. Earley also stated that: "Every time I go out in town he always ends up showing up, following me home. He has slashed my tire. And he had been to my house and stolen things from my house." Though Earley did not observe Warren slashing the tires of her car, she believed that Warren did it "[b]ecause no one else would have done it." With regard to the items allegedly stolen from her

---

[2] The Texas Family Code defines a "household" as "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." TEX. FAM. CODE ANN. § 71.005 (West 2008).

house, Earley recounted that Warren stole jeans from her drier because "he probably paid for them . . . ." Finally, Earley stated that Warren had recently broken through a window in her bathroom and taken some mail from her, though he did give the mail back a month later. Because Warren allegedly harmed her before and as a result of his recent behavior, Earley is afraid that Warren will harm her in the future.[3] She denied trying to get back at Warren by filing for the protective order.

On cross-examination, Earley admitted that she forgot to include the incidents involving the jeans and the mail in her original application for a protective order and that she did not file police reports regarding any of the incidents. She also acknowledged that, since their breakup, she has used Warren's bank account to pay her personal bills with Warren's permission. When asked what relief she was seeking, Earley noted that: "I want to be able to go out in Corsicana and him not show up and stalk me and [for] him [to] leave me alone."

While Warren argues that the alleged incidents of violence did not occur contemporaneously with the hearing on the protective order, we note that "[o]ftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.) (citing *In re T.L.S.*, 170 S.W.3d 164, 166 (Tex. App.—Waco 2005, no pet.), *overruled on other grounds by In re J.D.*, 304 S.W.3d 522 (Tex. App.—Waco 2009, no pet.)). Thus, the trial

---

[3] In a data entry form for the Texas Crime Information Center, it was noted that Warren is known to have abused drugs.

court reasonably could have concluded that Warren engaged in family violence and was likely to do so in the future based on Earley's uncontroverted testimony showing a pattern of violent and criminal behavior, including alleged burglary, stalking, and criminal mischief. *See Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("In parental-termination and child-custody cases, evidence that a parent has engaged in abusive or neglectful conduct in the past permits an inference that the parent will continue this behavior in the future . . . . This principle also applies in cases involving protective orders against family violence."); *Amir-Sharif v. Hawkins*, 246 S.W.3d 267, 272 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.) (affirming the issuance of a protective order when the victim testified at the hearing as to various instances of violence but did not proffer police records, photographs, or medical testimony to corroborate her testimony); *but see Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 824-25 (Tex. App.—Fort Worth 2007, no pet.) (holding that, in cases concerning a single isolated act of violence, past violence is insufficient to support a finding that future violence is likely to occur), *overruled on other grounds by Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011); *In re J.A.T.*, No. 13-04-00477-CV, 2005 Tex. App. LEXIS 6618, at *1 (Tex. App.—Corpus Christi Aug. 18, 2005, no pet.) (mem. op.) (same). Viewing the evidence in the light most favorable to the trial court's finding, we conclude that the evidence is legally sufficient to establish that Warren had engaged in family violence and will likely do so in the future. *See Reyes*, 272 S.W.3d at 592; *see also City of Keller*, 168 S.W.3d at 827. And, when considering the evidence in a neutral light, we cannot say that the trial court's findings are "so against the great weight and preponderance of the

evidence as to be manifestly unjust"; thus, we conclude that the evidence supporting the trial court's findings is factually sufficient. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. Accordingly, we overrule Warren's first two issues.

### III. THE AMENDED PROTECTIVE ORDER

In his third issue, Warren complains that the trial court entered its amended protective order without providing him notice or a hearing. Essentially, Warren argues that the trial court's amended protective order "was entered ex parte without legal notice to or a hearing for [him]."

In analyzing this issue, we first note that the trial court's temporary ex parte protective order, which Warren purportedly received, is virtually identical to the complained-of amended protective order. Second, it is clear to us that, in the original protective order, the trial judge mistakenly forgot to "check off" any of the boxes prohibiting Warren from engaging in certain acts directed towards Earley. Thus, by signing the complained-of amended order, which has several boxes "checked off," the trial judge was merely correcting the mistake made in the original protective order before the trial court's plenary power had expired. *See* TEX. R. CIV. P. 329b(d) (stating that the trial court has plenary power to "vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed"). Moreover, the amended protective order did not arise from the filing of a new application for a protective order. *See* TEX. FAM. CODE ANN. § 82.043 (West 2008) (providing that, on the filing of an application for a protective order, each respondent is entitled to service of notice of the application), § 85.006 (West 2008) (stating that a trial court may render a protective

order that is binding, though the respondent did not attend the hearing, if the respondent received service of the application and notice of the hearing); *see also* TEX. R. CIV. P. 21 (requiring a party scheduling a hearing on a motion to serve notice of the hearing on all parties at least three days before the hearing is scheduled). It is undisputed that Warren received notice and that a hearing was conducted on Earley's sole application for a protective order. Nevertheless, though the trial judge did not detail every single act prohibited by the amended protective order, he did clearly articulate, in open court, that "there will be no more communications between Mr. Warren and Ms. Earley"; that Earley is no longer allowed to use Warren's bank account for personal expenses; and that Warren is to stay away from Earley.

Third, and perhaps most importantly, on April 25, 2011, Warren filed a motion nunc pro tunc to correct the amended protective order. The trial court granted Warren's nunc pro tunc motion and signed a third protective order, which mirrored the complained-of amended protective order except for a notation that the parties had not agreed to the terms of the protective order. In effect, the third protective order, which was properly titled as a nunc pro tunc protective order, superseded the amended protective order, thereby rendering any complaints about the amended protective order moot. *See* TEX. R. CIV. P. 301 (stating that there can only be one final judgment in a cause); *In re Office of Attorney Gen.*, 276 S.W.3d 611, 617 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding) ("This amended order superseded the August 8 order and moots the OAG's complaint about the August 8 order."); *In re K.L.R.*, 162 S.W.3d 291, 301 (Tex. App.—Tyler 2005, no pet.) (noting that complaints relating to temporary

orders that have been superseded by a final order are moot); *Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 562 (Tex. App.—San Antonio 1998, pet. denied) (holding that a later judgment, styled "amended final judgment," implicitly vacated an earlier judgment, styled "final judgment"); *see also Erlewine v. Erlewine*, No. 03-06-00308-CV, 2007 Tex. App. LEXIS 7256, at *5 (Tex. App.—Austin Aug. 29, 2007, no pet.) (mem. op.); *Nexus Fuels, Inc. v. Hall*, No.05-98-02147-CV, 1999 Tex. App. LEXIS 8148, at *7 (Tex. App.—Dallas Nov. 1, 1999, no pet.) (not designated for publication) (stating that "[o]nce an amended order is entered, it supersedes the original order" and concluding that because the original order had been superseded, appellant's complaints regarding the merits of the original order were moot). Therefore, based on the foregoing, we overrule Warren's third issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed August 31, 2011
[CV06]