Michael G. **VARDEMAN**, Appellant,

v.

**MUSTANG PIPELINE COMPANY,** Appellee.

No. 12–00–00141–CV.

Court of Appeals of Texas, Tyler.

March 22, 2001.

Joe Shumate, for Appellant.

Ken Good, for Appellee.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

WORTHEN, Justice.

In this condemnation case, the trial court granted Mustang Pipeline Company ("Mustang") an easement for an ethylene pipeline across the property of Michael Vardeman ("Vardeman") and awarded Vardeman $4,696.61 for the taking. Vardeman presents three issues for our consideration, all ultimately dependent upon his contention that Mustang is not a common carrier. We affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

In 1970, Mustang was incorporated as a common carrier in Texas to construct and operate pipelines carrying liquified minerals, among other oil products. On July 17, 1996, Mustang passed a resolution authorizing the construction of the pipeline at issue ("pipeline") from Mont Belvieu in Chambers County to Longview in Gregg County. On August 28, 1996, the Texas Railroad Commission ("TRC") granted Permit Number 05253 to Mustang to run the pipeline through seven Texas counties, including Nacogdoches County. On September 27, 1996, an agent from Mustang began discussions with Vardeman about acquiring an easement for the pipeline across Vardeman's property. Negotiations continued over the next two months until they were abandoned due to failure to reach an agreement. On January 3, 1997, Mustang presented its statement and petition for condemnation of an easement and right-of-way for the pipeline over the real property of Vardeman. On January 28, 1997, Vardeman appeared before court-appointed special commissioners to present evidence and argument as to the value of his real property taken by Mustang. The commissioners awarded Vardeman $7,500.00. On February 3, 1997, Mustang deposited $7,500.00 with the county clerk.

Mustang's motion for writ of possession was granted by the court on February 5, 1997. On February 21, 1997, Vardeman filed an objection to the award of the special commissioners alleging that Mustang failed to engage in good faith negotiations, that Mustang lacked authority to condemn his property because the taking was not within the statutory delegation of powers of eminent domain, that no public necessity was shown for taking his property, and that the special commissioners' award was inadequate.

Nearly two years later, on January 28, 1999, Mustang filed a motion for partial summary judgment asserting that, as a matter of law, Mustang was a common carrier with authority to condemn the property and that the only issue remaining for the factfinder was the amount of compensation due Vardeman. Vardeman responded that Mustang was not a common carrier and maintained that whether Mustang was a common carrier or private carrier was a disputed material fact issue requiring determination by a jury. On April 29, 1999, the trial court granted Mustang's motion for partial summary judgment determining that Mustang had the authority to condemn Vardeman's real property as a common carrier and that the only issue remaining was the amount of compensation due Vardeman for the legal taking. Vardeman promptly filed a motion for rehearing on the order granting Mustang's partial summary judgment. That motion was denied by the trial court. In October 1999, a jury trial was conducted on the sole issue of damages, and Vardeman was awarded $4,696.61 as compensation for the taking of his real property.

Judgment was entered on November 19, 1999. Shortly thereafter, Vardeman filed a motion for new trial again alleging that the trial court erred when it granted the motion for partial summary judgment on

the authority of Mustang, as a common carrier, to condemn his real property. Following the trial court's denial of his motion for new trial, Vardeman timely filed his notice of appeal.

In three issues, Vardeman contends the trial court erred when it granted Mustang's partial motion for summary judgment, when it failed to grant Vardeman's motion for rehearing, and when it failed to grant Vardeman's motion for new trial. Vardeman bases each of these arguments on his contention that Mustang is not a common carrier with statutory authority to condemn his property and avers that common carrier status is a question of fact to be determined by the jury as factfinder. We will, therefore, consolidate our consideration of the issues since resolution of the common carrier question is determinative of all three.

### SUMMARY JUDGMENT STANDARD OF REVIEW

An appellate court's review of a trial court's summary judgment ruling is de novo. *Toonen v. United Services Auto. Ass'n.*, 935 S.W.2d 937, 942 (Tex.App.—San Antonio 1996, no writ). A party moving for a traditional summary judgment under Rule 166a of the Texas Rules of Civil Procedure carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex.1999). If the movant's motion and summary judgment proof facially establish its right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Castillo v. Westwood Furniture, Inc.*, 25 S.W.3d 858, 860 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of a material

fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the non-movant. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Sup. Co.*, 391 S.W.2d 41, 47 (Tex.1965). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits and other summary judgment proof; the only question is whether or not an issue of material fact is presented. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952). Once the movant has established a right to summary judgment, the burden shifts to the non-movant to respond to the motion for summary judgment by presenting to the court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979).

The Texas Supreme Court has mandated the following standards for reviewing a summary judgment: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

### COMMON OR PRIVATE CARRIER

We begin our analysis with the Texas Legislature's definition of a common carrier:

**§ 111.002. Common Carriers Under Chapter**

A person is a common carrier subject to the provisions of this chapter if it:

(1) owns, operates, or manages a pipeline or any part of a pipeline in the State of Texas for the transportation of crude petroleum to or for the public for hire, or engages in the business of transporting crude petroleum by pipeline;

(2) owns, operates, or manages a pipeline or any part of a pipeline in the State of Texas for the transportation of crude petroleum to or for the public for hire and the pipeline is constructed or maintained on, over, or under a public road or highway, or is an entity in favor of whom the right of eminent domain exists;

(3) owns, operates, or manages a pipeline or any part of a pipeline in the State of Texas for the transportation of crude petroleum to or for the public for hire which is or may be constructed, operated, or maintained across, on, along, over, or under the right-of-way of a railroad, corporation, or other common carrier required by law to transport crude petroleum as a common carrier;

(4) under lease, contract of purchase, agreement to buy or sell, or other agreement or arrangement of any kind, owns, operates, manages, or participates in ownership, operation, or management of a pipeline or part of a pipeline in the State of Texas for the transportation of crude petroleum, bought of others, from an oil field or place of production within this state to any distributing, refining, or marketing center or reshipping point within this state;

(5) owns, operates, or manages, wholly or partially, pipelines for the transportation for hire of coal in whatever form or of any mixture of substances including coal in whatever form; or

(6) owns, operates, or manages, wholly or partially, pipelines for the transportation of carbon dioxide or hydrogen in whatever form to or for the public for hire, but only if such person files with the commission a written acceptance of the provisions of this chapter expressly agreeing that, in consideration of the rights acquired, it becomes a common carrier subject to the duties and obligations conferred or imposed by this chapter.

Tex. Nat. Res.Code Ann. § 111.002 (Vernon 1993). Ethylene is included in the broad definition of "crude petroleum." *See Bullock v. Shell Pipeline Corp.*, 671 S.W.2d 715, 719 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Common carriers in Texas have the right and power of eminent domain. Tex. Nat. Res.Code Ann. § 111.019 (Vernon 1993). The Texas Legislature has delegated to the TRC the authority to regulate pipelines that are common carriers. Tex. Nat. Res.Code Ann. § 81.051 (Vernon 1993). The TRC has jurisdiction over all persons owning or operating pipelines in Texas. *Id.; Bullock*, 671 S.W.2d at 719. The TRC may adopt all necessary rules for governing and regulating those persons. *Id.*

■ The authority of a pipeline company to condemn property is to be determined as a matter of law by the trial court. *See Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d 712, 722 (Tex.App.—Corpus Christi 2000, pet. denied). However, when determining whether Mustang is a common carrier under section 111.002(6) of the Texas Natural Resources Code, we have been instructed by the supreme court to give great weight to the TRC's determination of that issue. *See State v. Public Utility Comm'n of Tex.*, 883 S.W.2d 190, 196 (Tex.1994) ("The contemporaneous construction of a statute by the administrative agency charged with its enforcement is given great weight."); *see also Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex.1994) ("Construction of a statute by the administrative agency charged with its enforce-

ment is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute.") When the evidence before the court indicates that a pipeline carrying oil products (such as ethylene) has subjected itself to the authority of the TRC to regulate its activities, then it is a common carrier. *See Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 565 (Tex. App.—San Antonio 1998, pet. denied).

■ As part of its summary judgment evidence, Mustang introduced a letter from the TRC in reference to the Office of General Counsel's denial of a request for a hearing challenging Mustang's permit to build the pipeline as a common carrier. The letter reads, in relevant part:

> A review of Commission records indicates that Mustang has met the requirements of § 111.002(6) of the Texas Natural Resources Code for common carrier status. First, Mustang has subjected itself to the jurisdiction of the Commission by declaring on its T–4 application for permit to operate a pipeline that it is a common carrier. Second, Mustang has held itself out to the public for hire as evidenced by its Texas Local Tariff No. M–3 on file with the Commission. Therefore, Mustang is a common carrier subject to the jurisdiction of the Commission.

With the letter, Mustang established in its motion for summary judgment that it had subjected itself to the regulatory jurisdiction of the TRC. Also, Mustang's summary judgment evidence included the deposition of Ray Ratheal, an authorized representative for Mustang. Ratheal testified under oath that a tariff had been filed with the TRC outlining Mustang's public rates for transmitting ethylene. Ratheal stated that there had been negotiations with companies other than Mustang's parent company, Eastman, to carry products through the pipeline. These facts support the TRC's determination and Mustang's own contention that it is a common carrier.

Vardeman asserts that the facts before us in the instant case are similar to those the Waco Court of Appeals held to constitute a private carrier in *China–Nome Gas Co. v. Riddle*, 541 S.W.2d 905 (Tex.Civ. App.—Waco 1976, writ ref'd n.r.e.). We disagree. In *China–Nome*, the pipeline carrier had been incorporated in 1958. *Id.* at 907. The evidence established that the pipeline carrier, China–Nome, had laid part of its pipeline across the real property of James Riddle. *Id.* Riddle contacted the president of China–Nome on April 22, 1976 to inquire about "safety precautions being followed in the construction of the line." *Id.* That very same day, China–Nome made application with the TRC to operate the line as a public utility. *Id.* Riddle then sought a temporary injunction to restrain the building of the line. *Id.* This was granted by the trial court. *Id.* at 908. The trial court determined that the evidence before it showed that China–Nome was functioning as a private carrier rather than as a common carrier while constructing the pipeline in question. *Id.*

The instant case is distinguishable from *China–Nome*. Here, Mustang had been a common carrier since 1970. Before it began laying the pipeline, it had been granted a permit to do so as a common carrier by the TRC. Mustang had a tariff rate on file with the TRC. Mustang had submitted itself to the jurisdiction of the TRC to regulate its operation of the pipeline. Accordingly, we hold Mustang was a common carrier pursuant to section 111.002 of the Texas Natural Resources Code.

### PUBLIC USE

■ Vardeman also contends that Mustang's purpose for constructing the pipeline was not a public use. The Texas Constitution states:

§ 17. **Taking, damaging or destroying property for public use; special privileges and immunities; control of privileges and franchises**

Sec. 17. No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof.

TEX. CONST. art. I, § 17 (Vernon 1997). This constitutional requirement is satisfied when a company uses its pipeline in a manner declared by our legislature to be a public use. *See Loesch v. Oasis Pipe Line Co.*, 665 S.W.2d 595, 599 (Tex.App.—Austin 1984, writ ref'd. n.r.e.); *see also Mercier*, 28 S.W.3d at 718–19. The legislature has determined that moving a petroleum product such as ethylene from the producing areas to areas where it can be used is a public use. *See Mercier*, 28 S.W.3d at 719. Furthermore, in the instant case, the same facts which established that Mustang was a common carrier also established that the proposed use of the Mustang pipeline was for a public purpose. Thus, the trial court properly granted Mustang's motion for partial summary judgment, and its subsequent rulings upholding that order were also proper. For these reasons, we overrule Vardeman's issues one, two and three.

The judgment of the trial court is *affirmed.*