

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

February 15, 2007

The Honorable Frank J. Corte Jr.
Chair, Committee on Defense Affairs
  and State-Federal Relations
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0517

Re: Application of the Public Information Act to private entities exercising eminent domain powers under Senate Bill 7; application of Senate Bill 7 to common carriers (RQ-0455-GA)

Dear Representative Corte:

In *Kelo v. City of New London*, the United States Supreme Court held that the Takings Clause of the Fifth Amendment to the U.S. Constitution does not prohibit the government from exercising its eminent domain powers to transfer property ownership from one private party to another private party for economic development purposes. *See Kelo v. City of New London*, 545 U.S. 469, 482, 485 (2005). In response to *Kelo*, the Texas Legislature established limitations on the exercise of this power by enacting Senate Bill 7 during the Second Called Session of the Seventy-ninth Legislature. *See* Act of Aug. 16, 2005, 79th Leg., 2d C.S., ch. 1, 2005 Tex. Gen. Laws 1, 1–2. You ask about Senate Bill 7's addition of two new Government Code provisions, section 552.0037 and section 2206.001(c)(7).[1] We will discuss these provisions in turn.

### I. Government Code Section 552.0037

Section 552.0037 is an addition to the Public Information Act, chapter 552 of the Government Code (the "PIA"). Section 552.0037 addresses the PIA's applicability when an entity that is not a governmental body possesses eminent domain powers:

> Notwithstanding any other law, information collected, assembled, or maintained by an entity that is not a governmental body but is authorized by law to take private property through the use of eminent domain is subject to this chapter in the same manner as information collected, assembled, or maintained by a governmental body, but only if the information is related to the taking of private property by the entity through the use of eminent domain.

---

[1]*See* Letter from Honorable Frank J. Corte Jr., Chair, Committee on Defense Affairs and State-Federal Relations, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Feb. 22, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

TEX. GOV'T CODE ANN. § 552.0037 (Vernon Supp. 2006). You ask several questions about the enforceability of section 552.0037:

> 1. Do the provisions of [the PIA] that provide for criminal penalties or for the assessment of costs of litigation and attorney's fees apply to a private entity that holds information subject to Section 552.0037 . . . ?
>
> 2. Because Section 552.0037 makes certain information subject to [the PIA] but does not provide that the private entities holding the information are subject to the [PIA,] is Section 552.0037 too vague to be enforceable?
>
> . . . .
>
> 4. Given that Section 552.004 [of the PIA] provides that governmental bodies may determine the time for which information that is not currently in use will be preserved, subject to applicable law, can entities subject to Section 552.0037 . . . establish and follow record retention policies?
>
> 5. Is it correct that Section 552.0037 . . . only applies to information concerning condemnation proceedings filed in Texas, and not to condemnation proceedings filed outside of Texas?
>
> 6. Is it correct that Section 552.0037 . . . only applies to entities that . . . are authorized by law to take private property through the use of eminent domain in Texas, and not to entities exercising the right of eminent domain outside of Texas?

Request Letter, *supra* note 1, at 2.

## A. General applicability of the Public Information Act to an entity that possesses eminent domain powers but is not a governmental body

We start with your second question, which involves your observation that section 552.0037 makes certain eminent domain "information" subject to the PIA but does not expressly make the private entity that collected, assembled, or maintained the information a "governmental body" subject to the PIA. *See id.*

As your question suggests, the concept of a "governmental body" is integral to the PIA, as the obligation to disclose public information and related administrative procedures and enforcement provisions are generally made applicable only to governmental bodies. *See generally* TEX. GOV'T CODE ANN. §§ 552.001–.353 (Vernon 2004 & Supp. 2006). The PIA's definition of the term "governmental body" includes not only entities commonly understood to be governmental units, but

also entities that, for the most part, are not considered to be governmental in nature. For instance, certain nonprofit corporations are considered to be PIA "governmental bodies." *Id.* § 552.003(1) (A)(ix), (xi) (Vernon 2004). And outside of the general definition of a "governmental body," the PIA expressly makes certain property owners associations "subject to [the PIA] in the same manner as a governmental body." *Id.* § 552.0036.

Section 552.0037, however, does not expressly purport to classify a private entity that has eminent domain powers as a PIA "governmental body." *Compare id.* § 552.0037 (Vernon Supp. 2006), *with id.* § 552.003(1)(A)(ix), (xi) (Vernon 2004). Nor does section 552.0037 state that an entity that is not a governmental body and that has eminent domain powers is nevertheless subject to the PIA. *Compare id.* § 552.0037 (Vernon Supp. 2006), *with id.* § 552.0036 (Vernon 2004). Rather, section 552.0037 is silent about whether such an entity is itself subject to the PIA. *See id.* § 552.0037 (Vernon Supp. 2006).

But taking that silence to mean that such an entity is *not* subject to the PIA would render meaningless section 552.0037's provision that the entity's eminent domain information is subject to the PIA "in the same manner as information collected, assembled, or maintained by a governmental body." *Id.* Unless the entity that collects, assembles, or maintains eminent domain information is subject to the PIA, such information cannot be subject to the PIA "in the same manner as" a governmental body's information. *Id.* Without an entity in the role of a PIA governmental body, major portions of the PIA would be rendered inapplicable to eminent domain information. The PIA's express procedures for obtaining access to public information, for requesting an attorney general decision, and for enforcing the PIA if information is not made public are all predicated on the entity owning or holding the information being subject to the PIA. *See, e.g., id.* §§ 552.221 (Vernon 2004), 552.301 (Vernon Supp. 2006), 552.321 (Vernon 2004), 552.3215 (Vernon 2004). If the PIA's express enforcement provisions do not apply, eminent domain information's status as public information could be enforced, if at all, only through an ordinary lawsuit. *See id.* § 552.3215(k) (Vernon 2004) (providing that section 552.3215's provision for a suit for injunction or declaratory judgment "is in addition to any other civil, administrative, or criminal action provided by this chapter or another law").

In construing section 552.0037, we must presume that the Legislature intended all of the words in section 552.0037 to be effective and that the Legislature intended a result feasible of execution. *See id.* § 311.021(2), (4) (Vernon 2005). We must "give effect to all the words of a statute and not treat any statutory language as surplusage if possible." *See Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex. 1987). Section 552.0037's provision that certain eminent domain information is subject to the PIA "in the same manner as information collected, assembled, or maintained by a governmental body" has meaning only if the entity described in the section is itself subject to the PIA with respect to that information. Section 552.0037 necessarily implies that, even though an entity may not meet the PIA's general definition of a governmental body, with respect to its "information . . . related to the taking of private property by the entity through the use of eminent domain," the entity is subject to the PIA in the same manner as a governmental body.

Having concluded that the entities described in section 552.0037 are subject to the PIA with respect to certain information, we may address your specific questions about that section.

**B.     Record retention policies under the Public Information Act**

Your fourth question concerns the ability of an entity subject to section 552.0037 to establish and follow record retention policies under the authority of section 552.004 of the PIA. *See* Request Letter, *supra* note 1, at 2. Section 552.004 provides that "[a] governmental body . . . may determine a time for which information that is not currently in use will be preserved, subject to any applicable rule or law." TEX. GOV'T CODE ANN. § 552.004 (Vernon 2004). Because the entities described in section 552.0037 are subject to the PIA with respect to certain information in the same manner as a governmental body, such entities would be authorized to establish the time period for which eminent domain information is to be preserved, subject to applicable law. *See id.* §§ 552.0037 (Vernon Supp. 2006), 552.004 (Vernon 2004).

**C.     Civil enforcement under the Public Information Act**

In your first question, you ask whether the PIA's provisions for the assessment of litigation costs and attorneys fees would apply to a private entity holding the information described in section 552.0037. Request Letter, *supra* note 1, at 2. Because such an entity is subject to the PIA in the same manner as a governmental body, the PIA's procedures for seeking and enforcing access to eminent domain information, including the administrative procedures for obtaining an attorney general determination, would apply to obtaining disclosure of eminent domain information. *See, e.g.,* TEX. GOV'T CODE ANN. §§ 552.021, .221 (Vernon 2004), 552.301 (Vernon Supp. 2006). And, in answer to your first question, the provision for imposing attorney fees and litigation costs would apply in an injunction or declaratory judgment action concerning the entity under section 552.3215 of the PIA. *Id.* § 552.3215 (Vernon 2004).

**D.     Criminal enforcement under the Public Information Act**

You also ask in your first question about the applicability of the PIA's criminal penalties in the context of section 552.0037. *See* Request Letter, *supra* note 1, at 2. This question requires additional analysis because a penal statute must be clearly defined so as to afford due process or else it is void for vagueness. *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). Statutes do not offend the void-for-vagueness doctrine if they "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement." *Id.*

Section 552.353 of the PIA criminalizes the failure or refusal of an officer for public information or the officer's agent "to give access to, or to permit or provide copying of, public information." TEX. GOV'T CODE ANN. § 552.353(a) (Vernon 2004). Taken together, sections 552.0037 and 552.353 define with certainty the prohibited conduct, which is the failure or refusal to provide access to or copies of certain eminent domain information. *See id.* §§ 552.0037 (Vernon Supp. 2006), 552.353 (Vernon 2004). But the statutes do not expressly identify who is an "officer for public information" in the context of an "entity that is not a governmental body but is authorized by law to take private property" under section 552.0037. *See id.* Because in this context the identity of the person who is subject to the prohibition in section 552.353 is left to speculation, it is likely

that a court would conclude that the statutes do not provide notice that is sufficient to support a prosecution with reference to eminent domain information under section 552.0037. *See Bouie v. City of Columbia*, 378 U.S. 347, 350–51 (1964) (penal statute with precise language may be unconstitutional as applied to specific circumstances; court's construction of the statute to include such circumstances may be given effect only prospectively).

Section 552.351 of the PIA concerns the conduct of a "person." TEX. GOV'T CODE ANN. § 552.351 (Vernon 2004). A person that "wilfully destroys, mutilates, removes without permission . . . , or alters public information" commits an offense under section 552.351. *Id.* § 552.351(a). The PIA does not define "person," nor have the courts construed the term in the context of the PIA's criminal statutes. We are to construe words and phrases according to their common meaning unless they have acquired a particular meaning by legislative definition or otherwise. *See id.* § 311.011 (Vernon 2005). The common meaning of the word "person" is, of course, sufficiently broad to include an individual such as an officer or employee of an entity under section 552.0037. *See Comm'rs Court of Houston County v. Rodgers*, 691 S.W.2d 753, 757 (Tex. App.—Tyler 1985, no writ) (commonly understood meaning of "person" is "an individual human being"). Additionally, under the Code Construction Act, the word "person" is to be construed as including a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity," unless context indicates otherwise. TEX. GOV'T CODE ANN. § 311.005(2) (Vernon 2005). The term "person" in section 552.351 is therefore sufficiently broad to encompass private entities made subject to the PIA by section 552.0037, and we believe a court presented with the appropriate facts and circumstances would conclude that section 552.351 may be constitutionally applied in the context of section 552.0037 information.

Section 552.352(a)[2] also concerns the conduct of a "person," prohibiting the distribution of confidential information. *Id.* § 552.352(a) (Vernon 2004). As with section 552.351, we conclude that the term "person" in section 552.352(a) is sufficiently broad to encompass private entities made subject to the PIA by section 552.0037. However, section 552.352(c) states that "[a] violation under this section constitutes official misconduct." *Id.* § 552.352(c). And as a court has observed, "official misconduct . . . cannot be committed by an ordinary citizen." *Hall v. State*, 736 S.W.2d 818, 822 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd). Nevertheless, when section 552.352 is read as a whole, it appears that subsection (c) does not restrict the meaning of "person" as used throughout the section to only an individual capable of committing official misconduct. *See* TEX. GOV'T CODE ANN. § 552.352 (Vernon 2004). A court would likely conclude that a "person" subject to the PIA who violates section 552.352(a) commits a misdemeanor offense (according to section 552.352(b)), and the same act will constitute official misconduct (under section 552.352(c)) if the person is a governmental officer or employee. *See id.* Therefore, we believe a court presented with the appropriate facts and circumstances would conclude that section 552.352 may be constitutionally applied in the context of section 552.0037 information.

---

[2]We do not discuss subsections (a-1) and (a-2) of section 552.352 because they apply only to a person "who obtains access to confidential information under Section 552.008." *See* TEX. GOV'T CODE ANN. § 552.352(a-1)–(a-2) (Vernon 2004). Because section 552.008 authorizes receipt of confidential information only by "an individual member, agency, or committee of the legislature," we are not aware of any circumstance in which a private entity that possesses eminent domain powers will obtain access to any information under section 552.008. *See id.* § 552.008(b).

**E.  Condemnation proceedings filed outside of Texas**

Your last two questions regarding section 552.0037 are whether the section applies to information relating to condemnation proceedings filed outside of Texas and whether the section applies to entities exercising eminent domain outside of Texas. *See* Request Letter, *supra* note 1, at 2.  Section 552.0037 does not expressly state that it is limited to Texas eminent domain information. *See* TEX. GOV'T CODE ANN. § 552.0037 (Vernon Supp. 2006).  But to construe the section to apply to eminent domain proceedings outside of Texas would lead to absurd results that the Legislature could not have intended. *See Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991) (holding that "[i]nterpretations of statutes which would produce absurd results are to be avoided").  The PIA embodies state policy that the people are entitled to complete information about the affairs of their government "so that they may retain control over the instruments they have created."  TEX. GOV'T CODE ANN. § 552.001 (Vernon 2004).  Eminent domain is a governmental function, an inherent sovereign power of the state. *See Tex. Highway Dep't v. Weber*, 219 S.W.2d 70, 72 (Tex. 1949).  While the state may delegate this power to an individual or corporation, *Valero Eastex Pipeline Co. v. Jarvis*, 926 S.W.2d 789, 792 (Tex. App.—Tyler 1996, writ denied), an entity exercising this delegated power does so "as an arm of the State." *See Bates v. City of Houston*, 189 S.W.2d 17, 21 (Tex. Civ. App.—Galveston 1945, writ ref'd w.o.m.).  A private entity exercising eminent domain powers in another state would not be exercising governmental powers that derive from the State of Texas.  Consequently, we believe that a court would construe section 552.0037 as making information subject to the PIA only if the information is related to the taking of private property by the entity through the use of eminent domain powers that derive from the State of Texas.

**II.  Government Code Section 2206.001**

Senate Bill 7 also added section 2206.001 to the Government Code, which generally restricts the use of eminent domain for private benefit or for economic development purposes. *See* TEX. GOV'T CODE ANN. § 2206.001 (Vernon Supp. 2006).  The restrictions in section 2206.001 do "not affect the authority of an entity authorized by law to take private property through the use of eminent domain" for a number of specified purposes. *Id.* § 2206.001(c).  One such exception for the use of eminent domain to take property is for:

> (7)  the operations of:
>
> (A)  a common carrier subject to Chapter 111, Natural Resources Code, and Section B(3)(b), Article 2.01, Texas Business Corporation Act; or
>
> (B)  an energy transporter, as that term is defined by Section 186.051, Utilities Code[.]

*Id.* § 2206.001(c)(7)(A)–(B).  You ask if the form of business organization of a common carrier is determinative for this exception:

>    3.  Does a common carrier that transports natural gas liquids or oil or
>        gas products qualify under the exemption prescribed by Section
>        2206.001(c)(7) regardless of the form of the business organization of
>        the common carrier?

Request Letter, *supra* note 1, at 2.

We note first that subsections (c)(7)(A) and (c)(7)(B) are stated in the disjunctive and are separate exceptions. *See* TEX. GOV'T CODE ANN. § 2206.001(c)(7)(A)–(B) (Vernon Supp. 2006). Subsection 2206.001(c)(7)(A) excepts the operations of a common carrier that is subject to both chapter 111 of the Natural Resources Code and to section B(3)(b), article 2.01 of the Business Corporation Act. *See id.* § 2206.001(c)(7)(A); *see also* TEX. NAT. RES. CODE ANN. §§ 111.001–.406 (Vernon 2001 & Supp. 2006); TEX. BUS. CORP. ACT ANN. art. 2.01, § B(3)(b) (Vernon Supp. 2006). Under chapter 111 of the Natural Resources Code, a common carrier is a person who owns, operates, or manages a pipeline that transports crude petroleum and other substances under various circumstances. *See* TEX. NAT. RES. CODE ANN. § 111.002 (Vernon 2001). Article 2.01 of the Business Corporation Act prohibits a corporation from engaging in both the oil petroleum producing business and the oil petroleum pipeline business. *See* TEX. BUS. CORP. ACT ANN. art. 2.01, § B(3)(b) (Vernon Supp. 2006).[3] By its terms, article 2.01 only applies to corporations. *Id.* Because subsection 2206.001(c)(7)(A) of the Government Code excepts only the operations of a common carrier that is subject to article 2.01 of the Business Corporation Act, only a common carrier that is a corporation qualifies for the exception in subsection 2206.001(c)(7)(A). *See* TEX. GOV'T CODE ANN. § 2206.001(c)(7)(A) (Vernon Supp. 2006).

Subsection 2206.001(c)(7)(B) of the Government Code provides an exception for the operations of an "energy transporter" as that term is defined in the Utilities Code. *See id.* § 2206.001 (c)(7)(B). Section 186.051 of the Utilities Code defines an "energy transporter" as "a person who gathers or transports oil, gas, or oil and gas products by pipeline." TEX. UTIL. CODE ANN. § 186.051(3) (Vernon Supp. 2006). Under the Code Construction Act, the word "person" is generally to be construed as including a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." TEX. GOV'T CODE ANN. § 311.005(2) (Vernon 2005). Consequently, an entity's form of business organization does not determine whether it is an "energy transporter" as defined in section 186.051 of the Utilities Code, and a common carrier that meets that definition has the limited eminent domain authority specified under section 186.054. *See* TEX. UTIL. CODE ANN. §§ 186.051(3), .054 (Vernon Supp. 2006). And because an entity's form of business organization does not determine whether it is an "energy transporter" under the Utilities Code, it also does not determine whether the entity's operations qualify for the exception in subsection 2206.001(c)(7)(B). *See* TEX. GOV'T CODE ANN. § 2206.001(c)(7)(B) (Vernon Supp. 2006). Whether a pipeline entity

---

[3]The same requirement was brought forward in the new Business Organizations Code. *See* TEX. BUS. ORG. CODE ANN. § 2.007 (Vernon Supp. 2006). The new code has a largely prospective application and a mandatory effective date for existing entities of January 1, 2010. *See id.* §§ 401.001–.006. *See* Act of May 13, 2003, 78th Leg., R.S., ch. 182, 2003 Tex. Gen. Laws 267, 314.

qualifies for an exception under either subsection (c)(7)(A) or (c)(7)(B) will depend on the entity's specific circumstances, likely involving mixed questions of law and fact. *Cf. Vardeman v. Mustang Pipeline Co.*, 51 S.W.3d 308, 311 (Tex. App.—Tyler 2001, pet. denied) (determining that a pipeline company that transported petroleum products for hire and had subjected itself to the authority of the Railroad Commission was a common carrier with eminent domain authority under chapter 111 of the Natural Resources Code).

## S U M M A R Y

Under section 552.0037 of the Public Information Act (the "PIA"), an entity that has eminent domain powers but is not a governmental body is generally subject to the PIA in the same manner as a governmental body with respect to certain information. An entity described in section 552.0037 is authorized to establish and follow record retention policies that are consistent with applicable law. The PIA's provisions for the assessment of litigation costs and attorney fees generally apply with respect to the eminent domain information of an entity described in section 552.0037. It is likely, however, that the PIA's criminal provision prohibiting the denial of access to public information cannot be applied constitutionally in the context of section 552.0037 information. Section 552.0037 makes information subject to the PIA only if the information is related to the taking of private property within the State of Texas.

A common carrier must be a corporation for its operations to qualify for the exception in subsection 2206.001(c)(7)(A) of the Government Code. The form of business organization does not determine whether the operations of a common carrier qualifies for the exception in subsection 2206.001(c)(7)(B) of the Government Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee