In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-12-00128-CV
_____


**RHINOCEROS VENTURES GROUP, INC. AND BATSON CORRIDOR, L.P.,**
**Appellants**

**V.**

**TRANSCANADA KEYSTONE PIPELINE, L.P. AND J.L. CALDWELL**
**COMPANY TRUST F/B/O GUSTAVUS ADOLPHUS NORTHCUTT McFADDIN,**
**Appellees**

**On Appeal from the County Court at Law No. 1**
**Jefferson County, Texas**
**Trial Cause No. 119233**

### OPINION

This is an appeal from the denial of appellants' motion for summary judgment, in which appellants contended the trial court lacked subject matter jurisdiction because appellees were not statutorily authorized to condemn appellants' property. We affirm the trial court's order denying appellants' motion for summary judgment.

BACKGROUND

Appellee TransCanada Keystone Pipeline, L.P. ("TransCanada") filed a petition for condemnation against appellants Rhinoceros Ventures Group, Inc. ("Rhinoceros") and Batson Corridor, L.P. ("Batson") as well as other entities. TransCanada alleged that it is the owner and economic operator of the Keystone Pipeline System, which includes the Keystone Gulf Coast Section ("Gulf Coast"). According to TransCanada, Gulf Coast is "a common carrier pipeline that, upon completion of construction, will extend from Fannin County, Texas, to Nederland, Texas." TransCanada further alleged that as owner and economic operator of Gulf Coast, it is a common carrier "as that term is used and defined in the Texas Business Organizations Code and the Texas Natural Resources Code," and therefore possesses the authority to condemn land, rights-of-way, easements, and property necessary for the construction, maintenance, or operation of the common carrier pipeline.

Rhinoceros and Batson filed a motion for summary judgment,[1] in which they sought a summary judgment sustaining their plea to the jurisdiction "and dismissing this cause and condemnation proceeding for lack of subject matter jurisdiction." Rhinoceros and Batson argued that TransCanada is not a common carrier because (1) TransCanada cannot subject itself to the jurisdiction of the Texas Railroad Commission, (2) the pipeline is a contract carrier limited in its use to shippers having long-term contracts, (3)

_____

[1]Rhinoceros and Batson filed their motion for summary judgment subject to their previously-filed plea to the jurisdiction.

2

TransCanada has no tariff rate schedule on file with the Railroad Commission, and (4) TransCanada has no permit from the Railroad Commission to construct an intrastate pipeline since the Railroad Commission had found TransCanada's operation to be interstate. In response, TransCanada argued that section 111.002(1) of the Texas Natural Resources Code provides that an entity that engages in the business of transporting crude petroleum by pipeline in Texas is a common carrier, regardless of whether the pipeline is interstate or intrastate, and that appellants' reliance upon section 111.002(6) is misplaced. *See* Tex. Nat. Res. Code Ann. § 111.002(1), (6) (West 2011). The trial court signed an order denying the motion for summary judgment, and this appeal followed.

ANALYSIS

Rhinoceros and Batson challenge the trial court's ruling in three appellate issues. In issue one, Rhinoceros and Batson contend the trial court lacked subject matter jurisdiction of TransCanada's petition for condemnation brought by TransCanada because the pipeline at issue was an interstate pipeline. In issue two, appellants argue that Chapter 111 of the Natural Resources Code does not apply to the owner of an interstate pipeline. Finally, appellants assert in issue three that because the purpose of the oil and gas laws of Texas is to conserve oil and gas resources, a pipeline transporting crude petroleum from outside Texas contravenes that alleged purpose. We address these issues together.

3

Section 111.002 of the Texas Natural Resources Code provides as follows, in pertinent part:

A person[2] is a common carrier subject to the provisions of this chapter if it:

(1) owns, operates, or manages a pipeline or any part of a pipeline in the State of Texas for the transportation of crude petroleum to or for the public for hire, or engages in the business of transporting crude petroleum by pipeline;

. . .

(6) owns, operates, or manages, wholly or partially, pipelines for the transportation of carbon dioxide or hydrogen in whatever form to or for the public for hire, but only if such person files with the commission a written acceptance of the provisions of this chapter expressly agreeing that, in consideration of the rights acquired, it becomes a common carrier subject to the duties and obligations conferred or imposed by this chapter; *or*

(7) owns, operates, or manages a pipeline or any part of a pipeline in the State of Texas for the transportation of feedstock for carbon gasification[.]

Tex. Nat. Res. Code Ann. § 111.002 (1), (6), (7) (West 2011) (emphasis added). Section 111.019(a) of the Natural Resources Code provides that "[c]ommon carriers have the right and power of eminent domain." *Id.* § 111.019(a). Section 111.011 provides that "[t]the operation of common carriers covered by this chapter is a business in which the public is interested and is subject to regulation by law." *Id.* § 111.011.

---

[2]"Person" is defined as "any individual, partnership, firm, corporation, association, or any other business entity, a state agency or institution, county, municipality, school district, or other governmental subdivision." Tex. Nat. Res. Code Ann. § 113.002(13) (West 2011).

4

In construing a statute, we must "determine and give effect to the Legislature's intent." *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). We look first and foremost to the statute's words. *Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009). However, in determining the Legislature's intent, we do not confine our review to isolated words, phrases, or clauses, "but rather we examine the entire act to glean its meaning." *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001); *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2005) (instructing courts to construe words and phrases in context). "We look first to the statute's language to determine that intent, as we consider it 'a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent.'" *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999)). "If the statute's language is unambiguous, its plain meaning will prevail." *Id.*; *see also City of Houston v. Harris Cnty. Outdoor Adver. Assoc.*, 732 S.W.2d 42, 53 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

A court may not judicially amend a statute and add words that are not contained in the language of the statute unless doing so is required to give effect to a clear legislative intent. *Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex. 1988); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540-41 (Tex. 1981). Every word used in a statute is presumed to have been used for a purpose, and every word excluded from a

statute must be presumed to have been excluded for a purpose. *Cameron*, 618 S.W.2d at 540. In construing a statute, we may also consider the object sought to be attained; the circumstances under which the statute was enacted; legislative history; common law or former statutory provisions, including laws on the same or similar subjects; consequences of a particular construction; administrative construction of the statute; and the statute's title, preamble, and emergency provision. Tex. Gov't Code Ann. § 311.023 (West 2005).

The parties agree that TransCanada engages in the business of transporting crude petroleum in Texas by a pipeline or part of a pipeline. Therefore, construing section 111.002(1) according to its plain meaning, TransCanada is a common carrier. *See* Tex. Nat. Res. Code Ann. § 111.002(1); *Leland*, 257 S.W.3d at 206; *Hernandez*, 289 S.W.3d at 318. As previously discussed, appellants contend that section 111.002(1) applies only to intrastate pipelines. However, the Legislature did not use the words "interstate" or "intrastate" in section 111.002(1) when describing the type of pipeline to which the subsection applies, and we must presume that the Legislature excluded these terms for a purpose. *See Jones*, 745 S.W.2d at 902; *Cameron*, 618 S.W.2d at 540-41; *see also* Tex. Nat. Res. Code Ann. § 111.002(1). In addition, we note that, in other portions of the Natural Resources Code, the Legislature expressly includes the term "intrastate" when it wishes to limit the application of a particular statute to intrastate pipelines. *See* Tex. Nat. Res. Code Ann. §§ 91.251(1), 91.255(e), 118.002(a), 211.012(a) (West 2011); *Id.* §

6

117.012(a), (k) (West Supp. 2012); *see also* Tex. Gov't Code Ann. § 311.023(4) (In construing a statute, a court may consider other laws on the same or similar subjects.).

Appellants argue that the trial court lacked subject matter jurisdiction because TransCanada cannot comply with the requirement in section 111.002(6) that it subject itself to regulation by the Railroad Commission. *See* Tex. Nat. Res. Code Ann. § 111.002(6). However, as previously discussed, when we construe section 111.002(1) according to its plain meaning, TransCanada meets the requirements for common carrier status pursuant to that subsection. *See id.* § 111.002(1). In addition, the subsections within section 111.002 are connected disjunctively by the Legislature's use of the word "or." *See id.* § 111.002(6); *see also Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 581 (Tex. 2000) ("Or" is a disjunctive conjunction that signifies a separation between two distinct ideas.). Therefore, if an entity meets the requirements for common-carrier status contained in section 111.002(1), it need not also meet the requirements of section 111.002(6). We also note that subsection (6) of section 111.002 is expressly limited to pipelines for the transportation of carbon dioxide or hydrogen. *See* Tex. Nat. Res. Code Ann. § 111.002(6).

In an attempt to engraft the requirements of section 111.002(6) of the Texas Natural Resources Code onto section 111.002(1), appellants cite *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Texas, LLC*, 363 S.W.3d 192 (Tex. 2012). In *Tex. Rice*, the Supreme Court addressed the issue of whether a landowner may challenge

7

the eminent domain power of a carbon dioxide pipeline owner that has been granted a common-carrier permit from the Railroad Commission. *Tex. Rice*, 363 S.W.3d at 195. The Supreme Court held that section 111.002(6) governed whether Denbury Green was a common carrier. *Id*. at 197-98, 200. The *Tex. Rice* court did not address subsection 111.002(1), and the Supreme Court expressly stated in a footnote that its decision "is limited to persons seeking common-carrier pipeline status under Section 111.002(6)" and expressed no opinion concerning other types of pipelines. *Id*. at 202 n.28. Furthermore, the record in *Tex. Rice* included evidence suggesting "the pipeline would be exclusively for private use." *Id.* at 203.

Appellants also cite *Vardeman v. Mustang Pipeline Co.*, 51 S.W.3d 308 (Tex. App.—Tyler 2001, pet. denied). In *Vardeman*, the pipeline at issue was transporting ethylene, which fit within the broad definition of "crude petroleum," but the parties and the Court seemed to believe that section 111.002(6), rather than 111.002(1), governed. *Vardeman*, 51 S.W.3d at 312-13. Nothing in *Vardeman* indicates that the Tyler Court of Appeals meant to engraft the requirements of section 111.002(6) onto section 111.002(1). *Id*. Furthermore, opinions of our sister Courts of Appeals are not binding on this Court. *Mitchell v. John Wiesner, Inc.*, 923 S.W.2d 262, 264 (Tex. App.—Beaumont 1996, no writ). Therefore, to the extent that *Vardeman* could be arguably interpreted as engrafting the requirements of section 111.002(6) of the Natural Resources Code onto section 111.002(1), we decline to follow *Vardeman*.

8

Finally, appellants make a broad policy argument in issue three. Citing *Peterson v. Grayce Oil Co.*, 37 S.W.2d 367, 371 (Tex. Civ. App.—Fort Worth 1931), *aff'd*, 98 S.W.2d 781 (Tex. 1936), appellants contend that Texas's laws "relating to oil and gas have as their purpose the conservation of oil and gas resources for the benefit of Texas producers and landowners so the oil and gas will have value[,] and this purpose is not served by a pipeline transporting crude petroleum outside of Texas." However, while *Peterson* generally holds that Texas's oil and gas laws were intended to conserve Texas's resources, *Peterson* does not support appellants' contention that affording common-carrier status to an entity that is transporting oil produced and sold in a foreign jurisdiction contravenes that intention. *See id.* at 371-76. Appellants provide no other pertinent authorities supporting their contention, nor do they explain why their broad policy argument should trump the rules of statutory construction discussed above. *See* Tex. R. App. P. 38.1(i) (Briefs must contain appropriate citations to authorities.). For all of the aforementioned reasons, we overrule appellants' issues and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice


Submitted on October 4, 2012
Opinion Delivered November 29, 2012
Before McKeithen, C.J., Gaultney and Kreger, JJ.

9