In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00484-CV

_____

IN RE TEXAS RICE LAND PARTNERS, LTD.,
JAMES E. HOLLAND, AND DAVID C. HOLLAND

_____

Original Proceedings

_____

OPINION

Relators, Texas Rice Land Partners, Ltd., James E. Holland, and David C. Holland filed a petition for writ of mandamus asking this Court to order the trial court to vacate a writ of possession issued to TransCanada Keystone Pipeline, L.P. in conjunction with the pipeline owner's condemnation suit. We deny relators' request for mandamus relief.

BACKGROUND

Texas Rice Land Partners, L.P., James E. Holland, and David C. Holland (collectively TRL), own property in Jefferson County, Texas, currently used for

rice farming. Real party in interest, TransCanada Keystone Pipeline, L.P. is the owner and operator of the United States' portion of the Keystone Pipeline System. The Keystone Pipeline System is planned to comprise approximately 2,151 miles of crude petroleum pipelines originating in Hardisty, Alberta and traversing to U.S. Midwest Markets at Wood River and Patoka, Illinois, and from Steele City, Nebraska to Cushing, Oklahoma. The Gulf Coast Project, which includes the portion of the Keystone Pipeline System at issue in this case, consists of a 36 inch crude petroleum line that travels from Cushing, Oklahoma to Port Arthur, Texas (the Pipeline).

After unsuccessful attempts to negotiate the purchase of a necessary easement, TransCanada filed a petition for condemnation seeking to condemn an easement across property owned by TRL in order to complete construction of the Gulf Coast Project. The trial court entered an order appointing special commissioners, and a hearing was held in which the special commissioners awarded TRL $20,808 in compensation for the easements sought by TransCanada. TransCanada deposited the full amount of the award into the registry of the court, along with a surety bond for the amount of the award, and a cost bond in the amount of $5,000. TRL objected to the special commissioners' decision and

award on several grounds and requested a jury trial. TRL also objected, in part, on the ground that TransCanada did not possess the power of eminent domain.

TransCanada filed a motion to issue a writ of possession. TRL filed a response and objections to TransCanada's motion for writ of possession, and fully briefed its arguments regarding TransCanada's lack of common-carrier status. TransCanada filed a reply with evidence supporting its common-carrier status. The trial court held two hearings on the motion for writ of possession. The trial court issued two letter rulings and ultimately issued the writ. Subsequently, TRL filed this petition seeking mandamus relief from the trial court's order.

APPLICABLE LAW AND ANALYSIS

Mandamus "is an 'extraordinary' remedy that is 'available only in limited circumstances.'" *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996) (orig. proceeding) (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). Mandamus will only issue to correct a clear abuse of discretion for which there is not an adequate remedy at law. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). The party seeking mandamus relief must establish both the absence of an adequate remedy by appeal and the trial court's abuse of discretion. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 375 (Tex. 1998) (orig. proceeding); *CSR Ltd.*, 925 S.W.2d at 596. A

3

trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)).

A relator challenging a trial court's ruling as an abuse of discretion "labors under a heavy burden." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). "The relator must establish, under the circumstances of the case, that the facts and law permit the trial court to make but one decision. This determination is essential because mandamus will not issue to control the action of a lower court in a matter involving discretion." *Id.* (citing *Pat Walker & Co. v. Johnson,* 623 S.W.2d 306, 308 (Tex. 1981)). In determining whether the trial court abused its discretion, we review the entire record. *In re Clayton*, No. 09-05-412-CV, 2006 WL 1045175, at \*2 (Tex. App.—Beaumont Apr. 20, 2006, orig. proceeding) (mem. op.). We may not disturb a trial court's ruling based on conflicting evidence in a mandamus proceeding. *Id*. We will not find an abuse of discretion when a trial court based its decision on conflicting evidence and some evidence reasonably supports the trial court's decision. *Id*.

In the trial court, TRL objected to TransCanada's right to condemn the property, in part, on grounds that TransCanada was not a common carrier under the

4

Texas Natural Resources Code, and that the Pipeline was not a common-carrier pipeline under the Natural Resources Code.[1]  Section 111.002 of the Natural Resources Code provides in pertinent part:

> A person[2] is a common carrier subject to the provisions of this chapter if it:
>
> (1) owns, operates, or manages a pipeline or any part of a pipeline in the State of Texas for the transportation of crude petroleum to or for the public for hire, or engages in the business of transporting crude petroleum by pipeline[.]

Tex. Nat. Res. Code Ann. § 111.002(1) (West 2011) (footnote added).  Further, section 111.019 provides as follows:

> (a) Common carriers have the right and power of eminent domain.

---

[1] In the trial court, TRL also objected to the trial court's award of possession on the basis that Keystone did not have the right of eminent domain for the purpose of transporting crude into Texas that was produced outside of the State.  In *Rhinoceros Ventures Grp., Inc. v. TransCanada Keystone Pipeline, L.P.*, 388 S.W.3d 405, 408 (Tex. App.—Beaumont 2012, pet. denied)*,* we concluded that the Keystone pipeline was a common carrier line. *Id.* In addressing Rhinoceros Ventures' contention that section 111.002(1) applied only to intrastate pipelines, we noted that the Legislature did not use the words "interstate" or "intrastate" when describing the type of pipeline to which the subsection applies; in contrast, the Legislature expressly included such language in other portions of the Natural Resources Code. *Id*.

[2] "'Person'" is defined as "any individual, partnership, firm, corporation, association, or any other business entity, a state agency or institution, county, municipality, school district, or other governmental subdivision." Tex. Nat. Res. Code Ann. § 113.002(13) (West 2011).

5

(b) In the exercise of the power of eminent domain granted under the provisions of Subsection (a) of this section, a common carrier may enter on and condemn the land, rights-of-way, easements, and property of any person or corporation necessary for the construction, maintenance, or operation of the common carrier pipeline.

*Id*. § 111.019(a)-(b).

Chapter 21 of the Texas Property Code governs "[e]xercise of the eminent domain authority in all cases[.]" Tex. Prop. Code Ann. § 21.011 (West 2004). Pursuant to the statute, courts have the authority to:

determine all issues, including the authority to condemn property and the assessment of damages, in any suit: . . . . that involves a claim for property or for damages to property occupied by the party under the party's eminent domain authority or for an injunction to prevent the party from entering or using the property under the party's eminent domain authority.

*Id*. § 21.003(2). Once a condemnation petition is filed, the statute requires the trial court to appoint three special commissioners to hold a hearing and assess the damages of the owner of the property being condemned. *Id*. §§ 21.014, 21.015 (West Supp. 2012). If a party objects to the special commissioners' findings, the trial court tries the case in the same manner as any other civil case. *Id*. § 21.018 (West 2004). Section 21.021 deals with "Possession Pending Litigation" and provides in pertinent part:

(a) After the special commissioners have made an award in a condemnation proceeding . . . the condemnor may take possession of

6

the condemned property pending the results of further litigation if the condemnor:

> (1) pays to the property owner the amount of damages and costs awarded by the special commissioners or deposits that amount of money with the court subject to the order of the property owner;
>
> (2) deposits with the court either the amount of money awarded by the special commissioners as damages or a surety bond in the same amount issued by a surety company qualified to do business in this state, conditioned to secure the payment of an award of damages by the court in excess of the award of the special commissioners; and
>
> (3) executes a bond that has two or more good and solvent sureties approved by the judge of the court in which the proceeding is pending and conditioned to secure the payment of additional costs that may be awarded to the property owner by the trial court or on appeal.

*Id.* § 21.021(a).

In this mandamus proceeding, TRL argues that the trial court abused its discretion by refusing to resolve its challenge to TransCanada's common-carrier status prior to granting TransCanada a writ of possession. TRL relies on a letter ruling issued by the trial court following the first hearing on TransCanada's writ of possession. Regarding TRL's challenge to TransCanada's common-carrier status, the trial court stated the following:

> [C]ommon carrier status and therefore the ultimate right to condemn under the statutory scheme will ultimately require resolution through the judicial process. It is sufficiently clear in the statute that the ultimate resolution of that issue is not determinative of the issue of

7

> possessory rights that clearly exist by statute independent of the ultimate resolution of disputed facts. Thus the various bonding requirements to protect the owner should the ultimate fact issue resolution preclude the taking. Nothing in *Denbury* . . . suggests to this court that a pre-possession determination of common carrier status is required or allowed under the statutory scheme.

Based on the Texas Supreme Court's holding in *Texas Rice Land Partners, Ltd. v. Denbury Green Pipeline-Texas, LLC*, 363 S.W.3d 192 (Tex. 2012), TRL argues that the issue of a pipeline owner's power to condemn must be fully resolved before the pipeline owner can take possession of private property in conjunction with its condemnation suit.

In *Denbury*, the Texas Supreme Court concluded that the carbon-dioxide pipeline owner had not established, as a matter of law, that it was a common carrier under section 111.002(6) of the Natural Resources Code. *Denbury*, 363 S.W.3d at 202. In the summary judgment proceedings, the pipeline owner submitted evidence that it obtained a common-carrier permit, filed a tariff, and agreed to make the pipeline available for public use. *Id*. But there was also evidence in the record that the pipeline owner intended to transport carbon dioxide for its own consumption, and no evidence in the record of any potential customers unaffiliated with the pipeline owner. *Id*. at 203. The Court explained that were this evidence sufficient, as a matter of law, to establish common-carrier status under section 111.002(6), pipeline owners could obtain the power of eminent domain merely by obtaining a

8

permit "and offering the use of the pipeline to non-existent takers." *Id*. at 202. The Court reasoned that "'[a *sine qua non*] of lawful taking . . . for or on account of public use . . . is that the professed use be a public one in truth.'" *Id*. The Court then held that

> for a person intending to build a CO2 pipeline to qualify as a common carrier under Section 111.002(6), a reasonable probability must exist that the pipeline will at some point after construction serve the public by transporting gas for one or more customers who will either retain ownership of their gas or sell it to parties other than the carrier.

*Id*.

The *Denbury* Court recognized that a permit by the Railroad Commission "granting common-carrier status is prima facie valid." *Id*. But the Court explained that "once a landowner challenges that status, the burden falls upon the pipeline company to establish its common-carrier bona fides if it wishes to exercise the power of eminent domain." *Id*. Under its stated test, the court held that the pipeline owner had not established its common-carrier status as a matter of law. *Id*. The court concluded that pipeline owners could not acquire "unchallengable condemnation power" under section 111.002(6) merely be self-declaring their common-carrier status. *Id*. at 204. "Merely holding oneself out [as a common-carrier] is insufficient under Texas law to thwart judicial review." *Id*. The court

9

reversed our prior judgment and remanded the case to the district court for further proceedings. *Id.*

The Texas Supreme Court expressly limited its opinion in *Denbury* to "persons seeking common-carrier pipeline status under Section 111.002(6)[,]" which is not applicable in this case. *See id.* at 202 n.28. The Court stated that it was not expressing an opinion on "pipelines where common-carrier status is at issue under other provisions of the Natural Resources Code or elsewhere." *Id.* Significantly, the Court in *Denbury* did not address the right of possession under Chapter 21 of the Texas Property Code. *See* Tex. Prop. Code Ann. § 21.021.

Section 21.021 allows a party with eminent domain authority to take possession of the condemned property, "pending the results of further litigation" if that party pays the property owner the amount of damages and costs awarded by the special commissioners or deposits the amount of the award into the registry of the court. *Id.*; *see also Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60-61 (Tex. 1991) (orig. proceeding) ("A condemnor takes constructive possession of [the] property when it deposits the commissioners' award into the registry of the court."); *Harris Cnty. v. Gordon*, 616 S.W.2d 167, 169 (Tex. 1981) (discussing former article 3268 and holding no injunction to possession should issue where condemnor complied with statutory requirement to deposit award money into the

10

court registry).  The primary purpose of the provisions of section 21.021 is to allow a party with eminent domain authority to possess the condemned property pending the determination of fact issues through the judicial process.  *See State v. First Interstate Bank of Tex., N.A.*, 880 S.W.2d 427, 430 (Tex. App.—Austin 1994, writ denied) (discussing the purpose behind enactment of Section 21.021).

Nevertheless, we recognize that there must be evidence in the record that reasonably supports TransCanada's assertion that it is an entity with "eminent domain authority," and it was error for the trial court to refrain from making such a preliminary finding.  *See* Tex. Prop. Code Ann. § 21.012 (West Supp. 2012). TransCanada submitted evidence in the trial court that established its compliance with section 21.021. In addition to its T-4 permit, as well as other permit applications, TransCanada presented the trial court with an affidavit from Louis Fenyvesi, the director of markets and supply for the TransCanada Keystone Pipeline.  Fenyvesi stated that he is familiar with the Gulf Coast Project.  He explained that the Gulf Coast Project would "commence at the crude petroleum supply hub at Cushing, Oklahoma, and terminate at existing crude storage terminal facilities near Nederland and Houston, Texas[.]"  Fenyvesi further stated:

> The Gulf Coast Project will transport crude petroleum owned by third party shippers unaffiliated with Keystone or Keystone's parent companies or affiliates.  Upon completion of the Gulf Coast Project, Keystone will be able to deliver crude petroleum from Cushing,

11

Oklahoma (which includes crude produced from various fields in Oklahoma, Texas [and] other jurisdictions including, crude transported in the Keystone Pipeline System from Hardisty) to the United States Gulf Coast . . . .

An open season was held for the Cushing, Oklahoma, connection point and various third party shippers have committed to binding Transportation Service and Throughput Agreements ("TSAs"). At this time, there are several binding TSAs with third party shippers for transportation of crude petroleum on the Gulf Coast Project for an aggregate daily volume of approximately 200,000 barrels of crude petroleum per day in the Pipeline. Under the TSAs, the third-party shippers will own the crude petroleum that is being transported in the Pipeline, they will not transfer title to the crude petroleum that is being shipped and the crude petroleum will be shipped for a fee, which fee will be set forth in the tariff to be filed by Keystone with the Federal Energy Regulatory Agency. . . .

The Gulf Coast Project pipeline will be operated as a common carrier pipeline. Any shipper wishing to transport crude petroleum meeting the specifications set forth in the tariff to be filed by Keystone . . . will have access to ship its crude petroleum on the pipeline for a fee[.]

Fenyvesi explained that most of the companies that will ship petroleum on the Gulf Coast Project will be refiners, producers and marketers. Fenyvesi stated that "Keystone does not own any refineries nor does it produce any crude petroleum, so third party shippers . . . will use the crude petroleum shipped on the Gulf Coast Project." TRL submitted no evidence to the trial court to contradict or otherwise challenge the evidence of TransCanada as a common carrier.

12

TransCanada produced undisputed evidence through the sworn affidavit of Fenyvesi, together with supporting documentation, to support TransCanada's contention that the Keystone Pipeline is a common carrier line. *See* Tex. Nat. Res. Code Ann. § 111.002(1). Therefore, any error by the trial court in this instance was harmless error. *See* Tex. R. App. P. 44.1(a). We conclude the trial court did not abuse its discretion in granting TransCanada's motion for writ of possession. *See* Tex. Prop. Code Ann. §§ 21.012, 21.021. We deny the petition for writ of mandamus.

PETITION DENIED.

_____
CHARLES KREGER
Justice

Submitted on March 7, 2013
Opinion Delivered May 23, 2013

Before Gaultney, Kreger, and Horton, JJ.

13